The People *ex rel.* Wood agt. Draper and others.

---

## SUPREME COURT.

### THE PEOPLE *ex rel.* FERNANDO WOOD agt. SIMEON DRAPER and others.

In an action of *quo warranto* to determine the right to a public office, an *injunction*, restraining generally the functions of the office, is not authorized by law.

Although, since the Code went into effect, actions of this kind have been, and by law now are classed among, and denominated *civil remedies*, so that the rule, that equity will not interfere in criminal matters, is no longer an obstacle to equitable relief in an action of this kind, yet an injunction restraining generally the functions of a public office in its exercise by an incumbent of the office, is not consistent with the interests of the state, or with the general principles which must govern as to an office emanating from the sovereign power. To restrain the action of the incumbent is to restrain all the functions of the office, for he, being in, even if wrongfully, must act, or no one can.

It may very well be, that a man, being a public officer, may be restrained in a proper case from doing a *particular act* of an official character, but it by no means follows that a public office may be restrained from dispensing its benefits to the public.

*New-York Special Term, May,* 1857.

THE complaint of the plaintiffs in this case, by the attorney-general, states that at the time of the passage of a pretended act of the legislature of this state, entitled "An Act to Establish a Metropolitan Police District, and to Provide for the Government thereof," on the 15th of April, 1857, the office of police commissioner was a public civil office in the city of New-York, and that the office of head of said police department was and is a public civil office, belonging to the office of mayor of said city, &c.; and that after that time, on the 23d of April, 1857, the defendants, as a pretended board of police, under said pretended act, without legal warrant, intruded into and usurped the office of police commissioner and head of the police department, and from thenceforth exercised said office of police commissioner and head of police department, and also all the powers which, before the passage of said pretended act, were conferred upon said board of commissioners of police and upon the mayor, &c., &c., as the head of police, and which relate to or are connected with the police government, appointments and discipline within said city, &c.; and still do usurp and exercise said offices, and all the power and authority, &c. &c., in violation of the constitution and laws of said state; and plaintiffs pray that defendants may show by what warrant they claim to hold and use said offices; and they demand judgment against defendants, that each of them be ousted from the power and authority aforesaid; and that said relator be declared entitled to hold and exercise all the power and rights of said police commissioner, and member of said board of police commissioners, &c., &c., as he of right ought to do under the laws of the state existing and in force at the time first above mentioned. There is also before the court an affidavit of the relator to the effect that he is actually mayor of the city, and that by virtue of various acts he is, and has been head and chief executive of

The People *ex rel.* Wood agt. Draper and others.

the police department, and as such has custody and control of a large amount and number of station-houses, telegraph apparatus, books and other property, real and personal, used for the police department; and also has the charge and direction of the whole police force and corps of about twelve hundred men. That defendants have organized as a metropolitan police commission, under said act; that deponent has been advised said act is unconstitutional and void; that he has been instructed by the common council to resist all action of the police commissioners by an ordinance to that effect; and unless said commissioners are enjoined from proceeding under said act, and from asserting power over said police force, or the property of the department, the most serious consequences may ensue to the peace of the city; and that it is necessary to the rights of deponent, and to the good order of the city, that said commissioners be enjoined until a decision can be had in the suit. On these papers an order has been made by a justice of this court, restraining defendants from exercising any of the functions of police commissioners until the further order of the court. On these papers, including said order, and an affidavit of defendants that they have been severally nominated by the governor, and, with the consent of the senate, appointed commissioners under said act; and that they have taken the oaths of office, and have the proper certificates of office, and that they have met and organized as a board; and that great and irremediable injury will be done by the continuance of the injunction; for that the complaint admits that the defendants are in office, and by the terms of the laws set forth in said complaint, the moment these defendants take office all previous heads of police are abolished; and that the funds for the support of police government will be devoted alone to the support of the provisions of the law under which the defendants hold office by the fiscal officers having charge of them. The defendants move to dissolve the injunction.

F. B. CUTTING, J. M. VAN COTT, W. M. EVARTS, D. D. FIELD, A. J. VANDERPOEL and N. HILL, jr., *for defendant.*

The People *ex rel.* Wood agt. Draper and others.

CHAS. O'CONOR, JOHN W. EDMONDS and THEO. SEDGWICK, *for plaintiff.*

PEABODY, Justice. In this case, which is, in substance, an action to determine the rights of the defendants to offices into which they have entered, the plaintiffs rely on the invalidity of the law under which the defendants have derived their appointment. They allege that the statute, by virtue of which the defendants claim that they now hold the offices, is in conflict with the constitution of the state, and therefore void; and being so, they ask judgment of this court to that effect; and that defendants be ousted therefrom. This is the ultimate relief sought in this action, and to this relief plaintiffs seem to be entitled, if the law be, as they aver it is, unconstitutional. They also seek, however, the immediate aid of a temporary injunction, by which defendants shall be restrained from exercising any of the functions of their offices pending the litigation, and until the decision of the question as to the validity of the law under which they claim to hold. To this end they have presented their application to a justice of this court, (*ex parte,* as is our practice,) who, after hearing counsel on behalf of the application, has made an order restraining defendants from exercising the rights or performing the duties pertaining to the offices, as above stated. This order the defendants now move to vacate, and they urge their motion on several grounds :—

1. That the claim of plaintiffs that the law is unconstitutional is not well founded, but that it is, on the contrary, consistent with the constitution, and valid.

2. That the remedy by injunction, in an action of this kind, is not authorized by law in any case.

3. That if an injunction can issue at all in an action of this kind, the facts shown in this case are not sufficient to warrant it.

The first ground embraces the principal question at issue and to be determined in the suit—the constitutionality of the law; and inasmuch as that question will very shortly come before the court for decision, on the argument of the whole case made

The People *ex rel.* Wood agt. Draper and others.

by the plaintiffs, it is quite proper that I should refrain from passing upon it now, unless it shall become necessary for me to do so in deciding this motion.

The second ground on which this motion is put is one which relates to practice, and having no bearing on the general proposition on which the final result of the suit depends, may be decided without reference to anything by which that will be affected.

Is the relief by injunction allowed in an action of *quo warranto* by our practice in any case? That there is no precedent for it in an action of this kind is admitted on all hands. But plaintiffs say that the absence of a precedent furnishes little grounds for an argument against their position; that it is easily accounted for in a manner not inconsistent with their claim, that it is now a legitimate remedy. And it is true, as argued by them, that prior to the time of our constitution of 1846, the only courts in which an action of this kind could be brought were courts having only common law powers, and hence no court having cognizance of such a suit could administer the exclusively equitable relief of injunction. And it is also true, that until the time of our Code of Procedure, (1848,) suits of this kind were classed among, and denominated criminal rather than civil remedies, and courts of equity had a general rule of refraining from interference in criminal matters. Whereas, this court, as now constituted, has full chancery and common-law powers; and having possession of this suit for general purposes, can aid the plaintiffs by injunction, if they are entitled to that aid; and since the Code went into effect (1848) suits of this kind have been, and by law now are classed among and denominated civil remedies, so that the rule that equity will not interfere in criminal matters is no longer an obstacle to equitable relief in an action of this kind. If, therefore, the mere absence of machinery to grant injunctions in the courts in which alone suits of this nature could heretofore be properly brought, and the fact that remedies of this kind are called criminal, are the reasons why relief by injunction has never hitherto been known, these reasons being done away, there

would seem to be no longer any obstacle to that kind of relief. Actions of this kind, however, really were no more criminal in their nature, purposes or effects, formerly, than they are now, although then called criminal and now civil. And equitable relief by injunction was then as well known, and as proper in principle, and as well adapted to the wants of litigants in this description of actions, as it is now, although it was not, it is true, administered by the same court which had jurisdiction to try the case. Yet, if it had been then proper and desirable, it could have been had by application to a court of chancery, which had power to grant it in aid of the legal remedy in a proper case.

I am not satisfied that these reasons of convenience and habit of the courts suggested, are the real causes that this description of relief has never been known in this country and in England. On the contrary, I am inclined to look for reasons more substantial in their nature, and having better foundation in principle or policy.

I am inclined to think that such relief has not been deemed consistent with the interest of the state, with enlightened public policy, or with the general principles which must govern as to an office emanating from the sovereign power, and hence has never been adopted in practice; that the public welfare has been deemed to require that an actual incumbent of an office should not be forbidden to perform the duties of it for the time being, even though his title to the office were doubtful; that the public should not be deprived of the benefit of an office, merely because it was uncertain whether the person in, and ready to perform the duties of it, was there rightfully, even while the title of the party assuming to act should be in controversy. To restrain the action of the incumbent is to restrain all the functions of the office: for he, being in—even if wrongfully—must act, or no one can. And it is not at all difficult to see that in very many, and in most cases, the public interest would require that the duties of an office should not be suspended, and its functions cease, until the matter of personal right between rival claimants could be determined.

The People *ex rel.* Wood agt. Draper and others.

This, then, I take to be the reason that no cases of the kind are to be found in the reports—that the wisdom of the times has not approved of the principle on which such remedy is allowed, or has not deemed it discreet to adopt such practice, and that therefore it has never prevailed. (*Thompson* agt. *Commissioners of Canal Fund,* 2 *Abbott's Rep.* 248.) If this be the reason, the absence of precedent is important, and entitled to weight in considering this question.

In this view I am sustained by the decision of the chancellor of this state in *Tappan* agt. *Gray,* (9 *Paige,* 507,) and by the judgment of the court of errors in the same case, (7 *Hill,* 259.) In that case the chancellor refused to interfere, even incidentally, pending litigation as to the title to the office, to protect the fund arising from the emolument of the office, in favor of a plaintiff, whom he pronounced entitled to it, against an insolvent intruder, exercising the powers and receiving the fees for the time being; and he put his refusal on the ground that the public interest required the duties of the office to be performed by the incumbent, whether in it rightfully or not; and with so much delicacy did he regard the interest of the public in the matter that he declined to interfere even with the emoluments of the office, in which the public had no interest, lest such interference should interrupt, incidentally, the discharge of the duties of it, in which the public was interested. The court of errors—then our court of last resort—unanimously affirmed this decision; and so far as opinions were expressed, affirmed it for the same reasons given by the chancellor.

At the time of the adoption of the Code, then, (1848) no such practice had ever been sanctioned, and the principle upon which, if at all, it must prevail, had been, not only thus negatively, but in the case I have cited, if no other, affirmatively, repudiated. But it is said that public officers have often been restrained in the performance of acts under the warrant of their offices, when those acts have been shown to be unauthorized by law. Doubtless they have been, and will continue to be, very properly.

But restraining a person from doing a particular act, because

The People *ex ret.* Wood agt. Draper and others.

the act of itself is not proper to be done, is a very different thing from restraining the entire functions of a public office, on the ground that though the discharge of those functions is necessary to the public welfare, as the law, by creating it, has declared it to be, and no one else but the incumbent for the time can discharge them, still there is a doubt whether the incumbent is the proper person for the place, he shall refrain from acting, and the public dispense with the benefits of the office until the question of title can be decided by the tedious process of law.

It may very well be that a man, being a public officer, may be restrained, in a proper case, from doing a particular act of an official character; but it by no means follows that a public office may be restrained from dispensing its benefits to the public. That is a very different matter. The practical utility or benefit to the public of an office cannot be questioned before a court. The law, by creating it, has decided that question, and from that decision courts of justice entertain no appeal. The office itself is not only an emanation of sovereignty, but it represents, and in a measure embraces, the principle of sovereignty itself. Courts, therefore, will not undertake to restrain the action or operation of it, which they would in effect do if they should restrain generally the incumbent—he of necessity being, for the time, the only person through whom the public can have the benefit of the functions of the office.

It is not, as I understand, pretended that this remedy has been given of late by any express enactment. There is no pretence that it is expressly provided for in our present system of practice. The claim is, rather, that nothing in our present system forbids it, and that there is no good reason in the nature of things why this and the other provisional remedies in the Code should not be available to a plaintiff in this suit as in others. I have endeavored to show that there is good reason why it should not exist in cases of this kind—that it is opposed to, and inconsistent with principle and an enlightened policy; and if I have succeeded in this effort, I have shown sufficient reason why its existence should not be inferred from the ab-

sence of anything negativing the idea, and I might stop here. But a glance at the statute, by which the present action of *quo warranto* was created to take the place of the former writ of the same name, and information in the nature of it, will not be unprofitable. The first remarks, on the subject of this action, its uses and powers, are as follows—(*Code of Procedure*, § 428 :)— " The remedies heretofore obtainable in these forms "—(meaning writs of *quo warranto*, &c., which the preceding part of the sentence had abolished)—" may be obtained by civil actions, under the provisions of this chapter."—" Remedies, heretofore obtained in these forms may be obtained, &c., under the provisions of this chapter."

This remedy I have shown was not, theretofore, obtainable under the forms there referred to ; and this language is far from suggesting that any new ones were to be created. Indeed, it not only says that the old ones may, but by implication it suggests that only those theretofore obtainable may be obtained under the provisions of that chapter. The language, to be sure, is affirmative—that certain remedies may hereafter be obtained ; but it is pregnant with the suggestion of a negative—that other remedies were not generally to be had thereunder. Other sections of the Code, in expressly providing for this and other of the provisional remedies in certain cases in this action, strengthen the presumption that neither this nor the other provisional remedies are intended to be applicable to it, except where they are expressly declared in terms to be so ; and, on the whole, I am satisfied that it is not authorized by that system. (*See* § 435, *providing for arrest in certain specified cases, and* § 444, *&c.*)

The Code affords many other evidences that its general provisions as to actions do not apply to the action treated of in this chapter, to wit—*scire facias* and *quo warranto.·*

It may be said that some of this reasoning does not apply to a case in which the validity of the offices is in controversy. It is not necessary that it should, for this is not such a case. The existence of the offices is admitted necessarily in this suit ; and the fact that defendants are in, and exercising the functions of these offices, is expressly averred by plaintiffs, and forms the

basis of their action; and the title of the defendants to them is alone in question.

My conclusion is, that an injunction, restraining generally the functions of officers in a case of this kind, is not authorized by law.

The consideration of the other points, made by defendants, becomes unnecessary in the view I have taken.

The injunction must be dissolved.