# Beebe v. Robinson.

### *Appeal from Order refusing to dissolve Injunction.*

1. *Office; not property.* — In this State offices are not property in any strict legal sense.

2. *Address of grand jury; what sufficient to authorize requisition of additional bond.* — A report by the grand jury of the city court of Montgomery, made in term time, and addressed to the presiding judge of that court, as follows: " *We find the bonds of the county officers good, except that of the tax-collector. We recommend that he be required to give additional security,*" properly certified to the probate judge of that county, authorizes him to require an additional bond of the tax-collector.

3. *Vacancy in office; what creates.* — The failure of a public officer to give an additional bond, legally required of him, occasions a vacancy in the office, which, being duly certified, authorizes the appointment of another to fill it or the institution of judicial proceedings to divest the right of the former incumbent.

4. *Same; when former officer, after vacancy occurring, may be treated as officer de facto.* — The official acts of a tax-collector, who, failing to give an additional bond, obtained an injunction restraining the governor's appointee from claiming the office or exercising any of the duties thereof, and thereafter continued to discharge the duties of the office, will, so far as necessary for the protection of third persons and the public, be treated as the acts of an officer *de facto.*

5. *Same; former incumbent and not appointee must resort to action to determine right to office.* — One duly appointed, commissioned, and qualified to fill a vacancy in office duly certified to the appointing power, becomes the legal incumbent, and entitled to discharge the duties of the office. The former incumbent and not the appointee must resort to action at law to determine the right to the office.

6. *Same.* — An appointee duly commissioned and qualified to fill a vacancy in an office, duly certified to the appointing power, cannot be restrained or interfered with by injunction at the instance of another claimant, from entering upon the discharge of the duties of the office; nor can his right to the office be determined in any way by the chancery court.

7. *Overruled case.* — The case of *Bryan* v. *Bruner* (in MSS.) overruled.

8. *Mandamus; when will not lie.* — *Mandamus* will not lie to compel the probate judge to approve an official bond, which he, acting in good faith, was of opinion was insufficient, and for that reason declined to approve.

APPEAL from Chancery Court of Montgomery.

Heard before Hon. ADAM C. FELDER.

This was an appeal from an order refusing to dissolve an injunction.

The case as made by the bill and the answer, so far as it is material, may be thus stated: —

At the general election in November, 1871, appellee Robinson was duly elected tax-collector of Montgomery county, and after having been commissioned and duly qualified, entered

[Beebe v. Robinson.]

upon the discharge of the duties of the office, and so continued up to the filing of the bill. At the July term, 1874, of the city court of Montgomery, the grand jury made a report or address, in term time, addressed to the presiding judge of that court, in which was made the following statement: "*We find the bonds of the county officers good, except that of the tax-collector. We recommend that he be required to give additional security.*" This report was duly certified by the clerk, under the seal of the city court, to GEORGE ELY, probate judge, who thereupon issued and served upon the appellee a requisition to give an additional bond, as required by the statute.

Robinson, denying the authority of the probate judge to make the requisition, tendered a bond, within the time prescribed, which the probate judge declined to approve, on the ground that the sureties were insufficient. Thereupon, on the day before the expiration of the time by which the probate judge was authorized to certify to the governor a vacancy in the office by reason of Robinson's failure to file an approved bond, he applied to and obtained from the judge of the second judicial circuit a rule *nisi* against the probate judge, returnable to the next term of the circuit court, to show cause why he should not be compelled to approve the bond tendered. In this petition, as well as in the bill filed in this cause, it is alleged that the refusal of the probate judge to approve the bond was dictated by personal malice and enmity toward appellee, and that the bond tendered was in all respects legal and sufficient, as the probate judge well knew. It is further alleged that the probate judge, in order to avoid service of the rule *nisi*, secreted himself in the outskirts of the city until the time should elapse when he would be authorized to certify a vacancy, and one hour before the rule *nisi* was served upon him, made and delivered to the governor a certificate of vacancy in the office, by reason of the failure of Robinson to file an approved additional bond, as required by the requisition. It is unnecessary, in the view which the court took of the case, to refer more in detail to the allegations of the bill on this point.

On the 27th day of August, 1874, the governor appointed Eugene Beebe tax-collector for Montgomery county, and caused a commission to issue to him, as such, under the great seal of state. This commission was in the usual form, and stated nothing as to the appointment being made to fill a vacancy. On the same day Beebe duly qualified by giving an approved bond and taking the oaths required by law, and since that time held himself out to be tax-collector, acted as such whenever he could, and sought to induce tax-payers to pay taxes to him.

The bill alleges that the proceedings of the grand jury and the subsequent action of the probate judge and the commission-

ing of Beebe are not "due process of law," and cannot operate to deprive Robinson of the right to or possession of the office · that being in office under election, and actively discharging the duties thereof, under a *bonâ fide* claim thereto, and in good faith having applied for a *mandamus* to compel the approval of his bond, which application is still pending, complainant Robinson is entitled to the possession of the office until the dispute to the title can be legally adjudicated; that being in office he cannot file a *quo warranto* or otherwise test Beebe's rights at law, and Beebe has not as yet brought any action at law against complainant; that by reason of Beebe's holding himself out as tax-collector, and by his endeavors to collect taxes and prevent their payment to complainant, complainant has been greatly impeded in the dischage of the duties of the office; that unless Beebe is restrained by injunction, the "taxpayers will be greatly harassed, taxes prevented from being collected, and the interests of the county of Montgomery and of the State of Alabama greatly prejudiced and injured."

Beebe is made defendant to the bill, and its prayer is that he be enjoined from claiming the office, or any of the rights, emoluments, papers, or property appertaining to it, and restrained from any interference whatever with complainant as tax-collector, until the further order of the court; that Beebe be compelled to deliver up whatever written evidence he may have of his appointment as tax-collector, and that on the final hearing the commission be cancelled and the injunction made perpetual, and for general relief. Upon complainant's entering into bond in the sum of a thousand dollars, the register, in accordance with the *fiat* of the judge of the second judicial circuit, issued an injunction as prayed for.

The answer of the respondent Beebe did not controvert the main allegations of the bill, except as to the sufficiency of the bond tendered, alleging that the probate judge, in refusing to approve it, had been actuated purely by a sense of duty, and affirmed the regularity and validity of the action of the grand jury and the subsequent proceedings resulting in the certificate of vacancy being made to the governor, and respondent's appointment by him as tax-collector. In the answer was incorporated a demurrer, the grounds of which were that the bill was without equity.

Afterwards respondent moved in vacation for a dissolution of the injunction, upon the denials in the answer, and for want of equity in the bill. The chancellor overruled the motion and hence this appeal.

ELMORE & GUNTER, for appellant.

[Beebe *v.* Robinson.]

RICE, JONES & WILEY and D. S. TROY, *contra.*

MANNING, J. — Several causes, more or less like the present, have been before us during this term. In the argument of them, the idea has been kept prominent that public offices are the property of the incumbents. Much stress has been laid on the rights of persons in them as such. And sometimes it seemed to be supposed that the putting of one person into an office to which another had been elected, who has failed to do some act required to enable him to hold it, differs little, if at all, from the ejection of a citizen from his patrimonial estate, without due process of law.

Expressions imputing this character to public offices may be sometimes proper enough when used in illustration of an argument. It should not be forgotten, though, that such offices were not created for the benefit of individuals. The emoluments pertaining to them give them value, it is true, and make them much sought after for the income they afford. But these emoluments are merely incidental, — the salaries or pay for duties to be performed in the service of the public.

The offices themselves, if property at all, are the property of the people of the State. They are merely occupied by persons who are in the employment of the State as its officials. They may, not improperly, be considered as organs of the body politic, to which belong important functions in the political system; without the regular and proper performance of which functions there cannot be in the body politic — the State — that vigorous life and health which are necessary to constitute a prosperous and honored commonwealth. We have, therefore, more than once during this term, repelled the idea' that the offices of the State are property in the sense in which it has become common so to regard them. *Ex parte Lambert,* p. 79; *Ex parte Harris,* in MS..

No doubt a citizen who has been elected according to law to an office has an interest in and a right to it, on complying with the conditions prescribed by law, upon which he is authorized to take and hold it. But being an agent therein, or servant of the public, he is subject, like other employees, to the rules and regulations ordained by those who created the agency, and for whose benefit it exists. The fact that he has been elected to it by a popular vote does not exempt him from the obligation to conform to such regulations, or, on failure to do so, from being dismissed in the methods and by the officials appointed by legislative or constitutional enactments, for the protection of the public interests.

Among public agents, tax-collectors are among the most indispensable. They gather from the people the revenue intended

[Beebe *v.* Robinson.]

for both state and county treasuries; without which revenues the administration of the government, and peace and good order in the community, could not be maintained. The law would consequently be very defective, if it did not provide that tax-collectors should furnish undoubted security for fidelity in the collection, safe keeping, and payment of the public dues. Statutes are enacted to effect these objects, which require them, before entering upon the discharge of their duties, to execute bonds with good and sufficient sureties, intended to be adequate to secure the public against peculation and delinquency. If it be afterwards ascertained that these bonds are not adequate security, others are required to be executed, approved, and filed. And if this be not done within a prescribed time, on certificate thereof to the governor, it is made his duty to appoint other persons to take the places of those so in default.

Some such arrangements are indispensably necessary to prevent general disorder in the administration of public affairs. Is there any reason for presuming that the duties created by these arrangements will not be conscientiously performed by the authorities on whom they are devolved? Let us see who these authorities are.

The bond of a tax-collector must be approved by the judge of probate of his county. The latter is himself elected by the people of the same county to a judicial position of so much concern to every citizen, that an election to it implies, on his part, intelligence, integrity, and an acquaintance with and fidelity to his constituents; while at the same time a natural deference to the will of those constituents would incline him rather to favor than to be too exacting towards a tax-collector of their choice.

The question whether the bond is afterwards an adequate security, is to be determined from time to time by the grand juries or court of county commissioners of the county; both of which bodies must be presumed to be, as the law intends they shall be, composed of substantial, respectable, law-abiding, and disinterested citizens, solicitous for the welfare of the community, and representing every portion of it. Under our system of government, where, better than in these bodies, could the people, through the legislature, have lodged this power of supervision on their behalf, over the security against misconduct, which is required of the receivers of the people's money? In an inquiry of this sort, the people themselves could not collectively engage. Public interest demands prompt and faithful action in the matter; and the agencies employed seem well adapted to secure impartial justice to the individual.

If, in the exercise of the authority thus conferred, a grand jury or the court of county commissioners represents that the

bond of the officer is an inadequate security, the judge of probate is commanded to notify him thereof in writing, and require a new bond to be executed, and if it be not furnished within the ten days prescribed by the statute, the law declares the office to be vacated, and requires the judge of probate to make a certificate thereof to the governor, who must appoint some other person to the place. The vacancy thus declared is a true vacancy, without anything more being done, and may be at once filled by the governor. And his appointee, on giving bond and being qualified and commissioned according to law, becomes the true incumbent of the office, and entitled to demand and have all the books, papers, and other things belonging thereto.

Whether the vacancy mentioned, although a true vacancy, is so absolute as, without more, to strip the citizen who was elected by a popular vote of his right, by virtue thereof, to the office, in case he should afterwards file a good and sufficient bond approved according to law, before the appointment of his successor, we need not now determine. It seems to be intimated that it is not, in *Sprowls* v. *Lawrence*, 33 Ala. 674. The vacancy is declared for reasons of state, which require that offices shall be occupied. And it is certain that without so first complying with the provisions of the law in this respect, he is so entirely out of office that if he should then collect taxes from persons liable to pay them, they could be recovered back by an action against him. *Peck* v. *Holcombe*, 3 Port. 320.

This would be the situation, unless a court should interpose in his favor, as in this case was done by injunction, which would, with the commission he had previously received, give him such a color of title to the office as that his acts therein should be regarded, in the interest of the public, though not for his own benefit, as those of an officer *de facto*, and be a protection to those who should deal with him as such.

Robinson, the appellee in this cause, was elected in November, 1871, tax-collector of Montgomery county, and entered upon the discharge of his duty as such. In 1874 a grand jury of the county, constituted by the city court then in session, reported to it as follows : " We find the bonds of the county officers good, except that of the tax-collector. We recommend that he be required to give additional security."

This was certified to the judge of probate, who notified Robinson thereof, and in writing required of him additional security accordingly. On the last day allowed by law for the furnishing of this security, Robinson, at two o'clock in the afternoon, as he says, went to the judge's office in the courthouse to present to him a new bond, with sureties alleged to be good and sufficient, but did not find him there. An hour or

[Beebe v. Robinson.]

two afterwards he met the judge of probate elsewhere in the city of Montgomery, and then delivered the bond to him to be approved and filed ; and two or three hours later, about six o'clock in the evening, the judge returned the bond to Robinson, informing him that he refused to approve it, and with an indorsement on it, signed by the judge, to that effect. This occurred in August last.

On the next day the judge of probate, in due form, certified that the office of tax-collector of the county was vacant, to the late governor, who some days afterwards appointed the appellant Beebe to it; and he having executed an official bond with sureties, which was approved and filed, and having qualified according to law and received his commission, entered upon the discharge of the duties of tax-collector, and gave notice thereof by advertisement to the public.

Thereupon Robinson filed the bill in this cause against Beebe, the appellant, alleging the premises, and that the judge of probate, in refusing to approve his bond, had acted from prejudice and corruptly, and had evaded the service upon him of an alternative writ of *mandamus*, issued by the judge of the circuit court, and that being in office, he, Robinson, could not bring his suit in the nature of a *quo warranto* against Beebe, and Beebe was not bound to bring a like suit against him; wherefore, he prayed a temporary injunction against Beebe to restrain him from exercising or claiming to exercise the office of tax-collector, and a perpetuation of the injunction at the hearing of the cause, and that Beebe be required to bring his commission into court to be cancelled.

Upon this bill, the judge of the second judicial circuit, which embraces Montgomery county, made his *fiat*, commanding the injunction to be issued upon Robinson's executing his bond with sureties in the sum of $1,000 conditioned according to law, and a motion having been made in the chancery court in September last to dissolve this injunction for want of equity in the bill, and also upon the answer of Beebe, the late chancellor of the southern division overruled the motion and continued the injunction.

From this decree of the chancellor Beebe brings the cause into this court by appeal.

The counsel for appellee Robinson, disclaiming here any jurisdiction in this court to decide which of the parties is really entitled to the office in dispute, insists that this injunction should be retained until that question is determined in a court of law by a suit (it is intimated) yet to be brought, which Robinson, being in office, cannot bring, and Beebe may not choose to bring.

What then becomes of the interest of the State ? The grand

[Beebe v. Robinson.]

jury reported Robinson's bond not good ; and the truth of this report is not controverted in his bill.  The additional bond he offered was pronounced insufficient by the judge of probate, and not being accepted or filed, is no security at all.  And under the operation of the injunction, Robinson has been, for months, apparently kept in office as tax-collector of a county from which revenue exceeding $100,000 is annually collected, upon an injunction bond for $1,000, approved by a register in chancery, instead of an official bond of adequate amount, approved by the judge to whom that duty was by law intrusted.

It is suggested that this court may require a bond in a larger penalty ; and it is insisted that it ought to continue the injunction in favor of " an incumbent holding in good faith under a prior election or appointment and qualification " until the appointee of the governor shall oust him by *quo warranto*, or some other action at law, upon the verdict of a jury.

If this shall be the practice of courts of chancery, how is a delinquent tax-collector ever to be promptly replaced according to the provisions of the statute ?  Under title V., part I., of the Revised Code, relating to " offices and officers," are a number of sections that declare what shall constitute a vacating of office by the person in occupation of it.  Section 177 (embracing tax-collectors) provides " such officer must give such additional bond ten days after the day specified in such requisition, and failing to do so, *he vacates his office*, and the officer making the requisition *must at once* certify the same to the appointing power, by whom the vacancy must be filled."  And in the second *article* afterward, section 193 (154), it is enacted : " In all cases in which it is not otherwise expressly provided, when any office is vacated, except by the death of the incumbent, all books, papers, property, and money belonging or appertaining to such office, must, on demand, be delivered over to his qualified successor ; and every person violating this section is guilty of a misdemeanor, and on conviction thereof must be fined not less than two hundred dollars."

The succeeding sections provide for a prompt proceeding by *mandamus*, to compel the delivery of such books, &c., and for the imprisonment of the persons refusing to comply.

To grant or continue an injunction in such a case is to thwart the express design of the State, and obstruct its officials in the employment of the means prescribed by it to perpetuate its organization and carry on administration.  We can hardly conceive a more improper use of the extraordinary writ of injunction.

The law, it will be observed, itself declares the office to be vacated by the incumbent on his failure to give another bond. And, as we have further seen by the case of *Peck* v. *Holcombe*

[Beebe v. Robinson.]

(*supra*), during such vacancy, even if no other person were appointed until the required bond was given, Robinson would have no right to coerce the payment of a cent of tax from any citizen. The commission to Beebe, upon his having given bond and qualified, put him into the office as the incumbent, and put Robinson, and not Beebe, to an action at law to determine, as between them, which had the better right. *Hill* v. *The State*, 1 Ala. 559; *People* v. *Draper*, 24 Barb. 265; *Tappan* v. *Gray*, 9 Paige, 509.

And the bill of complaint shows that he was proceeding to exercise the office of tax-collector. There was no other person who lawfully could do so, and the pretence of Robinson that he was the incumbent is contradicted by the facts disclosed by the bill itself. The effect, therefore, of the injunction which restrained Beebe from proceeding in the performance of the duties of the office, was really to prevent the functions of the office from being lawfully discharged at all. The injunction against Beebe could not legally confer authority on Robinson, and he was in continual violation of the law if, under cover of the injunction, he, as an officer *de facto*, proceeded to act as tax-collector.

A case similar to this arose under what was known as the Metropolitan Police Act of New York. It is reported in 24 Barb. 265, *The People ex rel. &c.* v. *Draper et al.* It was argued on one side by Evarts, D. D. Field, Vanderpool, and others, and on the other side by O'Conor, Edmunds, and Sedgwick.

Wood, mayor of New York, caused suit to be brought by the attorney general in the name of the *People ex rel. Wood*, setting forth that Wood had been and was mayor of New York, and as such was made by several acts chief executive of the police department, and was acting as such; that the defendants by virtue of an act of the legislature, which was alleged to be unconstitutional and void, intruded themselves into and usurped the offices of police commissioners and heads of the police department, and praying that at the hearing defendants should be perpetually enjoined, and that in the mean time a temporary injunction issue, &c.

A temporary injunction having been allowed, a motion was made to dissolve it.

In stating the point, PEABODY, J., said : " Is the relief by injunction allowed in an action of *quo warranto* by our practice in any case ? That there is no precedent for it in an action of this kind, is admitted on all hands," &c. After discussing the matter at some length, he came to the conclusion that the reason why such a power had never been exercised either in this country or England was, " that the public should not be

[Beebe v. Robinson.]

deprived of the benefit of an office merely because it was uncertain whether the person, in and ready to perform the duties of it, were rightfully in, even while the title of the party assuming to act was in controversy. To restrain the action of the incumbent is to restrain all the functions of the office ; for he being in, even if wrongfully, no one else can enter until he is removed, and he must act or no one can."

The same question came up before Chancellor WALWORTH, in *Tappan* v. *Gray*, 9 Paige, 509. While Tappan was legally in the office of flour inspector, discharging its duties, the governor, without the consent of the senate, illegally, as the chancellor thought, appointed Gray to the same office, who went on to discharge the duties and take the fees. The bill was filed by Tappan for an injunction until an action at law could decide the matter in dispute, and alleged that Gray was insolvent and unable to respond for the fees he might collect; wherefore he prayed for an injunction and a receiver of the fees.

The chancellor said : " This court certainly ought not to assume the jurisdiction to oust an officer in no way connected with the administration of justice here, and over whose appointment it has no control, from an office the duties of which he is discharging under color of an appointment from the executive of the State, until his right has been settled in the mode prescribed," &c.

A case like the present has heretofore been before this court (*Bruner* v. *Bryan*, in MS.) in which such an injunction was sustained. But being unable to adopt the views of the judge who vindicated the exercise of the power to enjoin the appointee of the governor, at the instance of his adversary, from qualifying and entering upon the office of sheriff, we feel compelled to overrule that case as an authority.

For the organization of the State by elections and appointments to office, constitutional and legislative arrangements have been made, and processes prescribed such as the people have considered best and most effectual for the prompt and efficient accomplishment of that essential operation. The persons or officials to whom they have intrusted the conduct, completion, and superintendence of these arrangements and processes, must be presumed to act conscientiously and faithfully, and the organization should not be obstructed by the interposition of courts, least of all by courts of chancery.

Pertinently here we may quote what was said by the chief justice of the supreme court of Pennsylvania, and concurred in by all the judges (among whom was Justice STRONG, now of the supreme court of the United States), in a case of contested election, in response to the objection of one of the parties, that he had been denied a trial by jury : " If this objection is well

founded, then every step in the official organization of the State, or in the perpetuation of its organization, might stand in need of the sanction of a jury, and is potentially subject to the delays and expense of a jury trial, except in respect to the election of governor and members of the legislature, in relation to which the Constitution makes special provision. . . . . This objection, therefore, has a fearful sweep, if it has any force; and we should stand appalled before it, if we should feel its force to be equal to its pretensions. But we do not feel it so. It is not in the act of organization of the State, nor in the perpetuation of its organization, but in the administration of rights under the organization, that the Constitution secures the right of trial by jury." *Ewing* v. *Filley et al.* 43 Penn. St. 384.

So we may say of the intervention of the courts without express authority of law, in a caselike the present, to prevent an appointee of the governor from taking office. If wrong be done or error committed, it is to be remedied or corrected by subsequent proceedings between adverse claimants in the courts, and not by interference to prevent the process of organization.

That complaints of fraud and misconduct against election officers and others will be made and believed during and after the periodical selection of officials in a popular government, is to be expected. But if upon charges of that sort the chancellors and judges of the State are to interfere, and take the determination of questions arising therein from those appointed by law to decide them, what is to hinder like charges from being made against them also ? And how shall they be preserved any more than others, if not from the influence, at least from the imputation of the influence of partisan and sordid motives ? *Quis custodiet ipsos custodes.* It concerns the highest interests of all citizens that the courts of the land shall not only be, but that the public shall also be satisfied that they are, free from the disturbing excitements of political contests, by being, as much as possible, kept from participation or control in the processes of state organization.

In the cause before us it was insisted that the report of the grand jury, from which we have quoted the portion in respect to the insufficiency of the appellee's bond, having been made to the judge of the city court, was for that reason ineffectual under section 195 (136) of the Revised Code. This section, it was argued, provided that the address mentioned should be made to the judge of probate. The city court has jurisdiction coextensive with the county of Montgomery, and is a court of both civil and criminal jurisdiction. A grand jury appertains to the court which constitutes it, and is under the charge of its officers. The probate court judge has no official connection with the grand jury, or it with him. Its members

[Beebe v. Robinson.]

are not necessarily known as such by him. The evidence of its acts are preserved only among the papers and upon the records of the court from which it derives its origin, and in which the names of its foreman and his associates are recorded. Official regularity, therefore, as well as uniform practice, sanction the custom of making its report to the court to which it appertains.

And we think that no one would be disposed to hold a judge of probate excusable in not acting upon such a report as the one shown in the bill in this cause, for the reason that it was not formally addressed to him. In this case a copy of it was certified to him from the city court.

The charge of a corrupt purpose to injure appellee, made against the judge of probate, is one we cannot notice to sustain. He is not a party to this suit; and we are not at liberty to act upon the idea that in the performance of an official duty, devolved upon him in respect to complainant's bond, he did not act conscientiously and properly. It does not appear that he absented himself during any of the fourteen days, after his requisition was served upon Robinson, that intervened before the bond was presented to be approved. Nor is it alleged that he was informed that another bond, or other sureties upon the bond which he refused to approve, would be tendered to him during that day. Indeed, it is not pretended that there was any intention to make any additional bond, or get any other sureties. Appellee says, on the contrary, that he immediately made application to the Hon. JAMES Q. SMITH, judge of the second judicial circuit, for an alternative writ of *mandamus*, for the purpose of compelling the judge of probate to approve the bond, and that the latter, by concealing himself, evaded the service of the writ. But this, if true, would constitute no reason for the injunction in this cause. The circuit judge had no legal right, nor had any other judge or court any right, to compel, by such a writ, the judge of probate to approve the bond in question, if he, acting under oath and charged by law with the duty of determining the question, was of opinion that the bond tendered was not good. *Ex parte Harris* (in MS.); *Ex parte Thompson* (in MS.).

In no aspect of this case can the bill for an injunction be sustained.

The decree of the chancellor overruling the motion to dissolve the injunction is reversed, the injunction here dissolved, and the cause remanded that it may be dismissed.