On Petition bor a Rehearing.
The application rests on the following grounds, specifically set forth, viz:
1st. “ The decision of the Court is not based upon any issue formed by the parties, or upon which the cause was decided by the lower court.
2d. “ The point decided was not the cause which actuated the Governor of the State in issuing a commission to the Relator.
3d. “ The Act No. 19 of 1878, upon which the said cause was so decided, does not in letter and spirit, maintain the principle deduced therefrom in the opinion of the Court.
4th. “ Laws are to be construed in accordance with their letter and spirit, and in such construction the causes which induced the legislator to make them must be duly regarded.
5th. “ A constitutional officer can only be removed for cause as designated by the Constitution.”
Wo consider these apparently different causes of complaint simply to mean:
That the judgment is not justified by the pleadings,
*282 That the Act of 1878, which the judgment enforces, was repugnant to the Constitution of 1868, which was in force at its adoption, and that it is inconsistent with the Constitution of 1879; therefore, that it never had any existence, and, if it had, it was repealed.
That if it was constitutional and is in force, it cannot be applied to the defendant, who could not have entered upon his office, which was not in existence, when he received his commission and took his official oath.
I.
The suit is a proceeding by the State, on the petition of the Relator who claims, under a commission from the executive, the office of Coroner for the Parish of Orleans, to the exclusion of the defendant thorefrom, on the ground that he has vacated the same, by accepting, after qualification, another office. The defendant denied the allegations. Averring title in himself to the office, as having' been elected and commissioned thereto, and taken the oath and furnished the bond required by law, the defendant prayed for judgment in his favor. Preliminary skirmishes, as to form, were silenced by a formal consent that the action be considered as brought under the intrusion into office act. The trial of the case proceeded on the merits. Evidence was introduced by both litigants without objection, and admissions were made by the parties, which fully established the facts by them respectively averred.
It may well be, that had the defendant merely answered by a general denial, evidence could not have been introduced on objection to show non-compliance by him with the law of 1878; but the defendant having-set up title in himself and averred his qualifications, supporting his allegations by proof, and praying for a judgment, he cannot complain that the Court has decided a question raised by him directly and specifically.
The question, under the allegations and the' evidence establishing them, was simply, which of the two litigants was entitled to the office. We found in favor of the Relator and against the defendant. We might have found for the defendant and against the Relator.
It is therefore patent that the judieatum was responsive to the quid judioandmm under the allegata, as modified and verified by the probata, namely, the issues presented by the parties themselves.
We revise the decrees and not necessarily the reasons assigned in support by inferior tribunal's. The decisions of this Court arc not required to be based upon and are not restricted to issues on which causes are decided in the lower court.
For the determination of this controversy, on the issues presented by each party, it was not necessary to inquire into the motive which *283 influenced the Governor in making the appointment. We do not say that the motive which is stated to have actuated him was not a proper one. We have preferred to rest our decision as we did. The important question was and is: did there exist a vacancy which the Governor could fill, and has he filled it?
That is the issue which we decided and which, owing to the magnitude of the question, we will again consider on this application.
H.
It is claimed that the Act of 1878 was repugnant to the Constitution of 1868, because its objects and purposes were beyond legislative authority or scope.
In support of that theory, the proposition is advanced, that it is a law of removal, by the executive, of a constitutional officer for a cause not enumerated in the organic law for his exclusion: that the legislature of 1878 assumed to add causes of removal to those mentioned in the Constitution of 1868, to vest the executive with a power conferred on other functionaries, and that the legislation being prohibited, is absolutely barren of any legal effect.
It is an axiomatic proposition, that a legislature is powerless to act where the Constitution has spoken and has left no room for its action. Hence, when a Constitution has provided for the qualification of certain officers, for their removal for certain causes, by certain authorities, and in a certain way, a legislature is incompetent to prescribe, as to those same officers, for different qualifications, different causes of removal, different authorities or different ways. It can neither add nor take from the Constitutional provisions on those subjects, which must remain untouched and enforced as written. It is because of a transgression of that principle, by the legislature of 1868, that the Supreme Court has declared the unconstitutionality of Act 39, then passed by that body. 21 A. 490; 23 A. 19; 28 A. 445.
Where a legislature, however, enacts laws concerning officers not mentioned in the Constitution, in order to compel them to furnish, within a fixed delay, the bond required of them by a law in force at the date of their election or appointment, and does so in mandatory terms, inflicting as a penalty, the forfeiture of the right to the office, in case of non-compliance, those laws cannot be said to be in conflict with the organic law when it is silent on the subject. Such legislation must be held to be valid and consequently binding.
Previous to the adoption of the Constitution of 1868, in which not a word is found relative to the office of Coroner, there existed laws requiring bonds from certain officers, which, not being in conflict with it, were expressly continued in force by Article 149. Among them was *284 the law requiring a bond from the Coroner for the Parish of Orleans. Acts of 1855, No. 93, R. S. 1856, p. 167, Sec. 1.
That law continued in existence until it was changed by that of 1868, No. 181, creating two Coroners, two incumbents for the office, directing their election and requiring' a bond similar to that' previously exacted.
This law of 1868'was maintained in force by Articles 258 and 259 of the Constitution of 1879, but modified by Article 147, which reduced the number of incumbents from two to one, fixing- his salary, but leaving it otherwise unaltered. The defendant has admitted the existence of that law, on the 2d of August, 1880, by furnishing a bond for $25,000, which is the amount fixed by it.
The legislation of 1878 found the Acts of 1855 and of 1868, concerning the office of Coroner, in force, and in demanding that officers of that class, who were required to take an oath and 'give a bond, should, after the date of the Act, do both acts within thirty days after the reception of their commission, it not only violated no constitutional provision, but, on the contrary, proved ancillary, and thus subserved the public interest.
As the Constitution of 1868 contained no mention of the Coroner, it cannot be claimed that the legislature of 1868 trenched upon it when it passed the Act.
We therefore conclude that when it was enacted, that law was not repugnant to the Constitution in operation, and that it continued in force afterwards, at least until the organization of the government under the Constitution of 1879, and then ceased to exist, if it was inconsistent with it. Art. Const. 1879, Nos. 258, 259. -
The question now arises: Was it repugnant to that Constitution? If it was, then it has been repealed, and is a lifeless form.
The theory upon which its unconstitutionality is claimed, lacks all foundation, as far as the defendant is concerned, and all officers like- ■ wise situated.
The Constitution does not provide that the Coroner, whose namo it contains, shall not give bond, besides'taking- the oath required, without exception, from all- State, parochial and municipal officers. The laws relative to the office of Coroner, in existence at the adoption of the Constitution, not being inconsistent therewith, were continued in being as'if the Constitution had not adopted Art. 258. The next Article, 259, provides'specially to that effect. In other respects, the Constitution has expressly left a door wisely open for eventual legislation, for it declares, Art. 147, that there shall be one Coroner for the Parish of Orleans, * * * whose duties shall be regulated by law.
The Act of 1878 continued in force. It did not add to the qualifications of the Coroner. Those qualifications were previously fixed in *285 1855 and in 1868. The existence and binding effect of the Acts of those years were formally recognized by the defendant, who complied with them by giving a bond on the 2d of August.
It is true that the Constitution of 1879, Arts. 298, 200, 201, provides for the causes of removal of certain designated officers, among whom the Coroner, but it cannot be claimed that the Act of 1878 has added to those causes, by prescribing as it does. It is not correct to say that it is a law of removal. Its solitary object is to force a compliance with the duties imposed by other laws touching the giving of a bond, by decreeing a forfeiture of the right of office, in case of non-observance of its requirements.
The Constitution refers to the removal of officers regularly and actually in office, charged with the commission■ of certain specified acts, done before or after their induction into office. It does not contemplate or propose to deal with the cases of officers not yet in office, or irregularly or illegally so, amenable to charges of omission of official duties or obligations, imposed upon them by law and to he performed before taking possession of the office. In other words, the Constitution provides for the removal of commissioned and qualified officers for acts done or committed, and does not provide at all for the exclusion of commissioned officers from office, for acts not done or omitted, and which should have been accomplished, as essential conditions precedent.
The law of 1878 is not one for the removal from office of any officer commissioned and qualified, regularly in office, and for the commission of disqualifying acts done. It is a law for the exclusion from office of officers commissioned but not qualified, not in office, or illegally so, for the omission of qualifying acts.
Tt is not correct, to say that this law vests the executive with the power of removal for causes not mentioned in the Constitution. No such object ever was contemplated and no such power was conferred. It merely declares, that officers who shall fail to qualify, within thirty days after the reception of their commission, shall forfeit their right to fill the, office, that there shall exist a vacancy, and that it shall he the duty of the. Governor to fill the vacancy in the exercise of the powers with which the Constitution has clothed Mm. The Governor is not vested with judicial powers to sit in judgment and pass upon the guilt or innocence of officers charged with disqualifying offenses, or with incompeteney, and to remove them from their position. He has not done so in this case. He is merely explicitly told that in such cases, as the Act provides against, there shall exist a vacancy, which, in the exercise of his powers, it will be legitimate for bim to fill by appointment, as be might and should fill, as effectually as when such occurs in consequence of death, resignation, removal or expiration of term. That *286 portion of the law was entirely superfluous, as the power of filling vacancies is specially conferred on the executive by the Constitution. As a matter of necessity, he has the right and is bound, before making an appointment, to ascertain whether there exists a vacancy, just as he would in a case of death, or any other case.
The Act of 1878 is not the only one of that description on our statute books. See Secs. 366, 380, 3765, 3540 of the R. S., 1870.
While the Constitution of 1868 was in operation, this Court held that the failure of a District Attorney pro tern., who had been elected by the Police Jury, to qualify within the legal delay, created a vacancy which could be filled by appointment of the Governor. 30 A. 657. Similar laws have been enforced in other States. 27 Ind. 496; 7 Kansas, 327, 52 Ala. 66, 491.
III.
The argument is devoid of merit, that if the law he constitutional, it cannot be applied to the defendant, who could not have entered upon the duties of his office, which was not in existence when he received! his commission and took hig official oath.
The office was created by the Constitution, and came into existence when the Constitution was adopted. The very instant that the defendant was elected to it, he became entitled to it on two conditions; first, that he would qualify by taking the oath and giving the bond ; and.secondly, that, surviving the Constitution of 1868, he would be in existence, ready and competent to be inducted into office at the organization of the government under the new Constitution.
The decisions in 32 A. 638 and 1232, are not to the effect that the offices created by the Constitution of 1879 did not exist until the 2d of August, 1880. Offices and officers in esse prior to that day, under the previous Constitution and previous legislation, continued until that day and until the induction of the new officers appointed or elected. Offices and officers in posse, created by the new Constitution, were kept in suspense until the happening of the two events, when they went into palpable actuality and activity.
We cannot be asked to ignore the letter of a mandatory law and to seek its spirit. We must apply that letter when it has a reasonable and plausible meaning. If we were at liberty to look after the spirit of the law in this case, we would say that it is such as justifies the application of the statute in all its rigor, to the defendant and to all others similarly situated, from whom a bond is required and who are not dispensed, by some provision, from the operation of that act.
We never intended to say, and did not rule that tills law applied to> *287 the constitutional officers first appointed or elected under the Constitution of 1879, who were required merely to take an oath. As to them it is no doubt true, that Act of 1878 proved inoperative, for the reason that, by Articles 149, 264 and 266 of the Constitution, they are required to take their oath only before entering upon the discharge of flieir duties. They could well have taken the oath in anticipation, or after the time had arrived when they could have been inducted into office.
By Article 149, the form of the oath required from all officers is given. By Article 264, certain named officers are directed to enter upon the discharge of their respective offices on the second Monday of January, 1880, and all other officers on the first Monday of April following, except those designated in Article 266, among whom the Coroner in the Parish of Orleans, who are authorized or required to enter upon their respective functions on the first Monday of August of the same year, <1880.)
The officers to whom the-Constitution refers in those Articles, are those whose election or appointment, provided by it, was to take place for the first time. The Constitution is clear that all those officers shall enter on their duties “ after complying with the requirements of existing laws."
This means the taking of the oath at any time before going into office, and the giving of the bond, where one is demanded, within the period fixed by the existing law, namely: the Act of 1878.
What the effect of this law may be, in relation to officers hereafter to be elected or appointed, and from whom a mere oath is required, is a question which is not before us, and on which we refrain from expressing any opinion.
The law of 1878, which was thus bridged over, has not interfered with the officers-first elected or appointed under the new Constitution, and from whom the official oath alone is prescribed, but has continued operative as to the officers from whom a bond is required. Its object was to secure the prompt furnishing of such bond by officers from whom one is exacted. To that extent, it neither was repealed nor suspended.
The penalty attached by the Act of 1878, for non-compliance with its exigencies, is a forfeiture of the right to the office.
When enforcing that Statute in its rigidity, we perform a solemn and unavoidable duty.
We find no error in our previous decree, which, therefore, remains undisturbed.
The petition for a rehearing is refused.