## BEAL *v.* RAY and Another.

On *September* 28, 1861, *A.*, who was the judge of the Court of Common Pleas for the 12th District of the State of *Indiana*, vacated said office, and on *September* 30, the vacation of said office became constructively known to the public, through the appointment of *B.* by the Executive of the State, as the successor in said office, and the entering of *B.* upon the duties of said office. On *Tuesday*, *October* 8, the general annual election for the State took place, and at such election votes were cast for *B.* and *C.*,

as follows, viz., for *B.* 3,799 votes, and for *C.* 4,189 votes. Suit by *B.* against *C.* and the Governor of the State, to enjoin the latter from issuing a commission to *C.* and the former from acting as judge of said Court.

*Held,* that the first section of the act regulating general elections, &c., (1 R. S. 1852, p. 260,) which provides that existing vacancies in office shall be filled at the annual general election, is so limited by the second section of said act, which prescribes the notice to be given of a general election, that an election to fill a vacancy can not legally be held where the vacancy did not occur long enough before the day of election to enable the steps required by the statute, as to notice, &c., to be taken.

*Held,* also, that the courts could not aid by *mandamus* an officer illegally elected to get possession of the office to which he claims to be elected.

*Held,* also, that a case was not made entitling *B.* to a remedy by injunction to restrain the Executive from issuing a commission to *C.*

APPEAL from the *Marion* Circuit Court.

PERKINS, J. — Complaint for an injunction. Injunction granted. The facts of the case we assume to be these: On *September* 28, 1861, the Hon. *John Coburn* vacated the office of judge of the Court of Common Pleas for the 12th District of the State of *Indiana,* said district being composed of the counties of *Marion, Hendricks* and *Boone.* On *September* 30, 1861, the vacation of said office by Judge *Coburn* became constructively known to the public, through the appointment, by the Executive of the State, of his successor, *Charles A. Ray,* Esq., and the entering, by said appointee, upon the duties of the office. On *Tuesday, October* 8, 1861, the general annual election for the State of *Indiana* took place; and, at said election votes were cast for *Charles A. Ray* and *John A. Beal,* as candidates for the office of judge of the Court of Common Pleas in and for said district, as follows, viz., for *Charles A. Ray* 3,799 votes, and for *John A. Beal* 4,189, making, in all of the votes cast, 7,988. The number of votes cast in *Marion,* one of the counties of said district, at the presidential election of 1860, was 9,056; so that, for aught that appears, the votes cast at this judicial election, may have been confined to *Marion* county. Were such the fact, the election, under the circumstances in the case at bar, according to *Marshall* v. *Kerns,* 2 Swan's (Tenn.) Rep. 70, would have been void for that reason. After the result of the election of *October* 8

<div style="float:right">

Nov. Term,
1861.

————

BEAL
v.
RAY.

Wednesday,
February 5.

</div>

Nov. Term, 1861.

BEAL
v.
RAY.

was known, Mr. *Ray*, being the incumbent of the judge-ship in question, by appointment, and holding the election of *October* 8, 1861, void, commenced a suit in the *Marion* Circuit Court against Gov. *Morton* and Mr. *Beal*, to enjoin the former from commissioning the latter, and the latter from acting, as judge. The Circuit Court granted a perpetual injunction.

Two questions are presented to this Court.

1. Was the judicial election involved in this case legal?

2. Has the proper remedy been adopted, supposing the election to have been illegal?

The Constitution of *Indiana* ordains, that all general elections shall be held on the second *Tuesday* in *October;* Art. 2, § 14; but it does not require that vacancies in office shall be filled at such elections.

Whether any, and if any, what vacancies shall be filled at such elections, depends upon statute. This fact puts out of the case, as an authority, that of *The People* v. *Cowles*, 3 Kernan, (N. Y.) 350.

Our statute, with its title, upon the subject is as follows:

"AN ACT regulating General Elections, and prescribing the duties of officers in relation thereto. [Approved *June* 7, 1852.]

"SECTION I. *Be it enacted by the General Assembly of the State of Indiana,* A general election shall be held annually on the second *Tuesday* in *October*, at which all existing vacancies in office, and all offices, the terms of which will expire before the next general election thereafter shall be filled unless otherwise provided by law: *Provided*, the first election for members in Congress shall take place at the general election in *October*, 1852, and every second year thereafter.

"SEC. II. The clerk of the Circuit Court shall, at least twenty days before such election, certify to the sheriff of his county, what officers are to be elected; and such sheriff shall give fifteen days' notice thereof, by posting up at all usual places of holding such elections, a copy of such certificate and by publication thereof in some newspaper of his county if any there be, and by delivering a copy thereof to the

Nov. Term, 1861.

BEAL
v.
RAY.

clerk of each township within the county, if there be any in such township, who shall notify the trustees of such township thereof." 1 R. S., chap. 31, Statutes, by Gavin & Hord, vol. 1, p. 306.

The question then, whether the judicial election held on *October* 8, last, was authorized by law or not, depends upon the meaning of the above copied statute.

The first section, taken by itself, authorized the election; but the first section was not all of the statute. There were subsequent sections which, in ascertaining the meaning of the statute, were to be considered and reconciled with the first; or, if that could not be done, to be allowed to modify or repeal it, so far as repugnant.

The first section authorized, generally, vacancies to be filled; but the second, and a later section, required that before "such elections," as authorized in first section, shall take place, the clerk should certify, &c., twenty days, and the sheriff should notify fifteen days, &c. Now, this section is just as obligatory, just as much law, as the first section; and so limits the first as to preclude elections under it to fill vacancies where the vacancies do not occur long enough before the day of election to enable the steps required by the statute to be taken. This must have been the intention of the Legislature, and is the legal interpretation and construction, the meaning, in short, of the law, as a whole.

Public policy may require that officers shall not have it in their power, by neglect of duty, to defeat elections.

We do not therefore intimate that where the vacancy had occurred such length of time before the election, the failure of the officers to certify and notify would vitiate an election held. Such then, as above interpreted, we deem to be the statute itself on this subject. And that this construction is in accordance with public policy, and the rights and interests of the people, there can be no doubt.

It secures to them time to examine the qualifications of volunteer candidates, to bring out others of their own volition, if desirable, and to ascertain precisely what the voters have to do, and to secure some concert of movement, some concentration of public opinion and action, so as to prevent

Nov. Term, a few persons near the public offices from imposing officers,
1861.       for long periods, upon the people.

BEAL            This, in popular governments, is a matter of the utmost
v.          importance.   See *Biddle* v. *Willard*, 10 Ind. 62; *Carson* v.
RAY.        *McPhetridge*, 15 *id.* 327.

It remains to consider the question of the remedy.

It is contended that proceedings for an injunction to arrest
the progress of one claiming to have been elected to an
office, while taking the steps necessary to possess himself of
the office, can not be upheld; that the officer must be per-
mitted to enter into the office, must, indeed, be aided by the
courts in getting into it, and then be ousted again by the
courts, if he is not rightfully in, by information in the nature
of *quo warranto*.   The case of *Brower* v. *O'Brien*, 2 Ind.
423, to some extent favors this position; and such is the
common law.   See 3 Blacks. Comm., Shars. Ed., note to
p. 265.   But the case of *Collins* v. *The State*, 8 Ind. 344,
which is approved in *Gulick* v. *New*, 14 Ind. 93, is inconsist-
ent with the proposition stated, and inaugurates a different
practice, to this extent, that the courts will not aid, by man-
damus, an officer illegally elected to get possession of the
office to which he claims to be elected.   In this case, had
the Governor refused to commission Mr. *Beal*, the Court,
being satisfied of the illegality of his election, would have
refused a mandamus if it followed the above cited case.   To
this extent the new practice may be reasonable; but the
granting of an injunction to restrain the Executive is a differ-
ent thing, and we do not think the principles or practice of
the law will justify it, unless in some special case that might
be made.   Here, no irreparable injury calls for the interpo-
sition by injunction.   Mr. *Beal* would be a *de facto* judge.
The public would not suffer from his acts.   The salary is not
large enough to put very great pecuniary interests at stake,
while the proper legal remedy by information, in the nature
of *quo warranto*, might be pending.   Indeed, it is not alleged
that the Governor threatens to commission Mr. *Beal*.   See
*Markle* v. *Wright*, 13 Ind. 548.

We come, then, to the conclusion that a case is not made
entitling the plaintiff to the remedy he has adopted; and,

hence, we might have avoided expressing an opinion on the question of the legality of the election, the main question between the parties; but we thought the public interest might be served, and litigation be prevented, by following the precedent set by the Supreme Court of the *United States*, in *Marbury* v. *Madison*, 1 Cranch's Rep. p. 137, and we have done so.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded, &c.

*J. L. Ketcham, J. E. McDonald, R. L. Walpole* and *J. Caven*, for the appellants.

*J. Morrison, J. D. Howland, H. C. Newcomb* and *T. A. Hendricks*, for the appellee.