JESSE GEORGE V. THE TOWNSHIP OF OXFORD.

MUNICIPAL BONDS, *Issued under Special Act; Requirement of Act Must be Complied with.* Where an act of the legislature was passed March 1st 1872, which took effect March 21st 1872, authorizing a certain township to issue bonds upon condition that a majority of the electors of the township should first vote for their issue at an election to be held for that purpose, and such act provides among other things that "*the time and place* of holding said election *shall be designated* by the said trustee, treasurer and clerk, (or any two of them) by giving *at least thirty days'* notice by posting written or printed notices thereof in three of the most public places in said township, and the election is held on April 8th, only eighteen days after said act took effect, and the bonds are issued on April 15th, only twenty-five days after the act took effect; and all this is shown on the face of the bonds, *held*, that both the election and the bonds are void; that sufficient time did not elapse after the act took effect and before the election was held and the bonds issued; and that no person can be an innocent purchaser of said bonds.

*Original Proceedings in Mandamus.*

ON the verified petition of *George*, showing that he was the owner and holder of two bonds (Nos. 11 and 12,) and the coupons thereof, of a series of twenty bonds of $500 each, issued by *The Township of Oxford*, in Sumner county, April 15th 1872—that the coupons on said bonds which became due and payable October 15th 1874 remained unpaid, and the proper officers of said Oxford township neglected and refused to levy a tax on the taxable property of their said township to pay said coupons, an alternative writ of mandamus was allowed by this court, and issued August 5th 1875, returnable August 28th, commanding the said township, and the proper officers thereof, to proceed at once to levy and collect a tax sufficient to pay in full the amount due said *George* upon said coupons, or to show cause before this court, why they refuse to do so. The following is a copy of one of said bonds:

No. 11. $500.
### OXFORD TOWNSHIP BRIDGE BOND.
#### COUNTY OF SUMNER, STATE OF KANSAS.

THE Township of Oxford, in the County of Sumner, and State of Kansas, hereby promises to pay to ————————, or bearer, the sum of Five Hundred Dollars on the 15th day of April 1882, with interest thereon at the rate of ten per cent. per annum, payable semi-annually on the 15th day of October and April of each year, upon the presentation of the coupons therefor hereto attached. Both principal and interest payable at the American Exchange National Bank in the city of New York.

This Bond is one of an issue of Ten Thousand Dollars made for the purpose of aiding in the building of a bridge across the Arkansas river at the Town of Oxford, in the County of Sumner, and State of Kansas; and in pursuance of an act of the legislature of the state of Kansas, entitled "An act authorizing the Trustee, Treasurer and Clerk, (or any two of them,) of the township of Oxford, county of Sumner, and state of Kansas, to subscribe for stock in the Oxford Bridge Company to the amount of Ten Thousand Dollars to aid in the construction of a bridge across the Arkansas river, at Oxford, in said county and State, and to issue the bonds of said township in payment therefor," approved March 1st, 1872; and in pursuance of a vote of the qualified electors of said township, had at an election held therein on the 8th day of April 1872, which said election resulted in a majority of 112 in favor of issuing said bonds in a total vote of 140. The faith of said township, and the receipts for toll of said bridge, are pledged to the payment of this bond and interest.

In testimony whereof, the Township Trustee, Clerk and Treasurer of said township, have caused this bond to be issued, duly signed, attested, and countersigned, this 15th day of April, 1872.

GEORGE T. WALTON, *Trustee.*

Attest: JOHN H. FOLKS, *Clerk.*

Countersigned — T. E. CLARK, *Treasurer.*

The defendant showed cause, alleging that said bonds were issued without warrant or authority of law; that the act of the legislature referred to in said bond, and alternative writ of mandamus, is repugnant to the constitution, and void; that no notice was given by the trustee, treasurer and clerk of said township, to the electors thereof, of the time, place, and purpose of the election referred to in said bonds; that said bonds were issued within a less period than thirty days from the time when said act took effect; that said bonds were made and issued in payment for a subscription of $8,300 made by the trustee, treasurer, and clerk of said township to the capital stock of the "Oxford Bridge & Ferry Company;" and that said "Oxford Bridge & Ferry Company" was and is a private corporation, engaged in building and maintaining a toll-bridge, and running a toll-ferry across the Arkansas river, at the town of Oxford. At the hearing of plaintiff's motion for a peremptory mandamus, in October 1875, it was

6—16 KAS.

agreed by the parties, that the election was held and resulted as recited in the bond, but that there was no record evidence that any notice of said election had been given, and that said "Oxford Bridge & Ferry Company" was and is a private corporation, as alleged in defendant's return.

*Thomas George*, for plaintiff:

The ultimate object to be attained, as shown by both the title and the body of the act cited in the bonds, (Laws of 1872, p. 320,) is one and the same thing, namely, the construction of a bridge across the Arkansas river at the town of Oxford in Sumner county. The act is not repugnant to § 16 of art. 2 of the constitution. Nor is said act repugnant to § 17 of art. 2 of the constitution. The act is not a "special law," within the meaning of that section; and the legislature is the judge whether the purpose could or could not be better accomplished by a general law. 1 Kas. 178; 11 Kas. 23.

But it is claimed that said act is unconstitutional for the reason that it provides for the levy and collection of taxes in aid of a private purpose. Is it possible, that a bridge built across the Arkansas river, and used by the public at will, is not a public benefit? . Undoubtedly the legislature that passed this act considered that the public would be benefited by the construction of said bridge, or it never would have provided for the levy and collection of taxes for the purpose of assisting in its erection. And the result of the vote cast at the election held under and by virtue of said act shows that the people of the township sought to be taxed considered the erection of said bridge a public benefit. To make a tax-law unconstitutional on the ground last mentioned, it must be apparent at first blush that the community taxed can have no possible interest in the purpose to which their money is to be applied. (2 Coler's Law of Municipal Bonds, 313, § 17; 16 Wall. 693.) Bridges are not private affairs. They are public improvements, and it is the right and duty of the state, county or township to advance the interest and promote the

welfare of the people by making or causing them to be made at the public expense. But if a state declines to make a desirable public improvement, she may permit it to be done by a company; and the fact that it is made by a private corporation does not take away its character as a public work.

The defendant contends that said bonds and coupons were issued without authority of law, for the reason that the provisions of the law under which they were issued, were not complied with, in this, that they did not give notice of the time and place of holding the election provided for by said law. The notice of the time and place of holding said election was not just such a notice as should have been given; yet, after the electors of said township met pursuant to the notice given, and proceeded to hold an election for the purpose mentioned in said act, and a great majority of the votes cast at said election being in favor of said "bridge and bonds," (and that *all* the electors of said township were present and voted at said election is not denied by the defendant,) and the bonds issued in pursuance of said election, and the bonds and coupons negotiated, and into the hands of innocent parties, it is *too late* to object to the irregularity in giving notice of the time and place of holding said election.

*J. Wade McDonald,* for defendant:

1. The special act of the legislature approved March 1st, 1872, and referred to in the alternative writ, and on the face of the bonds, as the foundation for their issue, is unconstitutional, and an attempt to extend the legislative power beyond its rightful limits. The "Oxford Bridge Company" is a private corporation, operated for private gain; and the power of taxation cannot be exercised or used in aid of private purposes. Sedg. on Const. & Stat. Law, 533; Dillon Munic. Corp. § 455; *Citizens' Loan Assoc. v. City of Topeka,* 20 Wall. 655; *National Bank v. City of Iola,* 9 Kas. 689; *Leavenworth Co. v. Miller,* 7 Kas. 479; *Clark v. Des Moines,* 19 Iowa, 199.

Said act is also invalid, because the subject thereof is not stated in the "title." (*Comm'rs of Sedgwick Co. v. Bailey,* 13

Kas. 600.) The title *permits a subscription,* to the stock of a certain company, and the issue of the bonds of the township in payment for such subscription; while the purview of the act authorizes and *directs* the issue of the bonds of the township to the amount of ten thousand dollars, as a *donation,* for a certain purpose.

Said act is also a special law, and is repugnant to §17 of art. 2 of the constitution.

2. There was not a sufficient compliance with the provisions of said act, (ch. 158, Laws of 1872,) on the part of the trustee, treasurer and clerk of the defendant township, as was necessary in order to vest in them the authority to issue said bonds. Sec. 5 of said act provides, that *before* any bonds should be issued under said ch. 158 the question of issuing bonds should be submitted to the electors of the township at an election to be held for that purpose, and that *thirty* days' notice of such election should be given by a majority of the officers named. This was not done. The act was approved March 1st, to take effect on its publication. It was published March 21st. The election was held April 8th, and the bonds were issued April 15th. There was therefore no power to issue the bonds, and they are void. *Hoppel v. Brown Township,* 13 Ohio St. 311; *Beckel v. Union Township,* 15 Ohio St. 437.

3. The subscription, in payment for which these bonds were issued and delivered, was made to the capital stock of the "Oxford Bridge & Ferry Company;" and this of itself is quite enough to invalidate the bonds. If a subscription was in any event authorized by the statute, it was authorized to be made to the "Oxford Bridge Company"—and to no other company or corporation. The "Oxford Bridge & Ferry Company" is not in law the "Oxford Bridge Company," and hence the subscription was unauthorized, and the bonds issued in payment therefor are void. *Lewis v. Comm'rs of Bourbon Co.,* 12 Kas. 186; *Marsh v. Fulton Co.,* 10 Wall. 676.

4. The plaintiff is not an innocent purchaser without notice. The recitals on the face of the bonds are notice of their

invalidity, so plain "that he who runs may read." The recitals on the face of the bonds, refer, first, to the act of the legislature, claimed as the foundation for the proceedings, which resulted in their issuance; and next to the date of the election pursuant to the result of which they purport to have been issued, and show also that the bridge, in aid of the construction of which they were issued, was a toll-bridge. Any purchaser of these bonds, or the coupons belonging to them, is undoubtedly chargeable with notice of the full text of the law under which they purport to have been issued; and if such purchaser omits to ascertain whether in fact there ever was such a law, and if so, then whether it was in force and of effect during the pendency of the proceedings resulting in the issuance of the instruments which depend upon it for their validity, he certainly so omits at his peril. 12 Kas. 186. Each and every irregularity in the issue of these bonds appears of record upon the face of the public records of said township and county. No notice of the election was given; the election was held on the *eighteenth* day after said statute was first published, and said bonds issued on the *twenty-fifth* day after said act took effect.

The opinion of the court was delivered by

VALENTINE, J.: Passing over all preliminary and minor questions, the main question presented to us in this case is, whether certain bonds issued by the township of Oxford, in Sumner county, to the "Oxford Bridge & Ferry Company," a private corporation of said township, are valid. Said bonds show upon their face that they were issued on April 15th 1872, "in pursuance of an act of the legislature of the state of Kansas, entitled 'An act authorizing the trustee, treasurer, and clerk (or any two of them) of the township of Oxford, county of Sumner, and state of Kansas, to subscribe for stock in the Oxford Bridge Company to the amount of ten thousand dollars, to aid in the construction of a bridge across the Arkansas river at Oxford in said county and state, and to issue the bonds of said township in payment therefor,' ap-

proved March 1st 1872; and in pursuance of a vote of the qualified electors of said township had at an election held therein on the 8th day of April 1872." Said act took effect March 21st 1872. (Laws of 1872, pp. 320, 321.) It provides for issuing "the bonds of said township to the amount of ten thousand dollars, for the purpose of aiding in the building and constructing a bridge across the Arkansas river at the town of Oxford in said county and state;" (§ 1.) But *to whom* the bonds were to be issued, is not designated in the act. And the body of the act does not anywhere provide for subscribing for stock in the "Oxford Bridge & Ferry Company," or in any other company or corporation. The title of the act mentions the "Oxford Bridge Company." Said act also provides that, "Before any of the bonds hereinbefore mentioned shall be issued, the question of issuing said bonds shall be submitted to the legal voters of said township at an election to be held for that purpose, which said election shall be conducted in all respects in conformity with the general election laws of this state. The time and place of holding said election shall be designated by the said trustee, treasurer and clerk (or any two of them) by giving at least thirty days' notice by posting written or printed notices thereof in three of the most public places in said township;" (§ 5.) Now the election to determine whether the bonds should be issued or not was in fact held on the 8th of April 1872, only eighteen days after the act authorizing the issue of the bonds took effect; and this is shown upon the face of the bonds. The notices of the election were in fact given only from March 24th 1872 to the day of the election, only fifteen days, instead of thirty, as the act prescribes; but this is not shown on the face of the bonds. And the bonds were in fact issued on April 15th 1872, only twenty-five days after the act took effect; and this is shown on the face of the bonds. We do not mean that the time when the act took effect is shown on the face of the bonds, but it is shown on the face of the bonds under what act, and under what election, the bonds were issued, and when the election was held, and when

the bonds were issued; and every one having anything to do with the bonds is required to know when the act under which they were issued took effect, and therefore what time elapsed after the act took effect till the election was held and the bonds issued. Now we think the election under which the bonds were issued was void. First, because sufficient time had not elapsed after the act took effect, and before the election was held; second, because sufficient notice of the election had not been given, and could not have been given, after the act took effect and before the election was held. And we think the bonds are void because no sufficient or valid election was held authorizing their issue. The legislature evidently intended that no bonds should be issued unless an election authorizing their issue should first be held. The legislature evidently intended that no such election should be held within less than thirty days after the act should take effect; and the legislature evidently intended that no such election should be held unless "at least thirty days' notice" thereof should first be given. The bonds were, in this case, issued in less than thirty days after the act authorizing their issue took effect. As we have already stated, the bonds do not show upon their face that the township board did not at least thirty days prior to said election call the election and give notice thereof. But even if they had done so, their action in that respect would have been void. Thirty days prior to said election there was no law in force authorizing the township board to call an election for any such purpose, or to give any notice of such an election. There is no room therefore for any innocent or *bona fide* purchaser of the bonds to suppose that the election was legally called, or that the proper notices thereof were legally given. And as this is an election that depends for its validity upon being legally called, and upon legal and proper notice thereof being given for at least thirty days prior to the election, and as these things were not done, the election must be held to be invalid. This is wholly unlike an election where the object of the election and the time and place for holding the same

are all fixed by law. There the election is valid, although a notice required by law may not be given. In such a case the electors are presumed to know the law. They are presumed to know what is to be done at the election, and the time and place of holding the same, because these are all fixed by law. Where "the time and place" of holding the elections are to be "designated" by some board or person, as in this case, and are not fixed by law, then the notice required by law must be given; and if the time "designated" be so near in the future that legal notice cannot be given, then the election must be held to be void. *Beal v. Ray,* 17 Ind. 554. As to the necessity for sufficient notice in certain special elections, see *People v. Porter,* 6 Cal. 26; *McCune v. Weller,* 11 Cal. 49; *People v. Martin,* 12 Cal. 409; *Westbrook v. Rosborough,* 14 Cal. 180. See also *Jones v. The State,* 1 Kas. 273; *Gossard v. Vaught,* 10 Kas. 162.

The judgment in this case must be rendered for the defendant.

All the Justices concurring.