*Richmond.*

KILPATRICK AND ALS. V. SMITH AND ALS.

March 29th, 1883.

1. CONSTITUTION—*Officers*—*Terms.*—Judges and all other officers elected or appointed, are empowered by article six, section twenty-five of the constitution of this state, to continue to discharge the duties of their offices *after their terms of service have expired,* until their successors have qualified, and no longer. *Johnson* v. *Mann, Judge, supra,* p. 265.

2. IDEM—*State Board of Education.*—Article nine, section two of the constitution, provides for a board of education composed of the governor, superintendent of public instruction, and attorney-general, and prescribes its duties; and section twelve directs that the general assembly shall make all needful rules and regulations to carry into effect the public free school system provided for by this article.

3. LEGISLATURE—*Board of Education—Duties.*—Acts 1869-70, chapter 259, section two, declares that the public free school system shall be administered by a board of education, a superintendent of public instruction, county superintendents of schools, and district school trustees; and section seven prescribes the duties of the board of education, among which is that of appointing and removing district school trustees, until otherwise provided.

4. DISTRICTS—*Trustees—Vacancies—City Council—Board of Education.*—Acts 1870-71, chapter 308, section three, makes each city ward a school district; section seven provides that all vacancies may be supplied at any time within sixty days after occurrence, by the city council, which shall divide the trustees into three classes, to hold office, one, two and three years respectively, and enacts that, "should the city council in any case fail to act within the time prescribed, it shall be the duty of the board of education to fill the vacancy or vacancies without further delay."

5. OFFICE—*Injunction—Quo Warranto.*—Where title to office is the point in controversy, the remedy is not by injunction, but at law, by information in the nature of *quo warranto.*

6. CASE AT BAR.—In 1870 the board of education appointed E. and five others trustees for the city of Portsmouth—three for each ward. City council failed to divide them into three classes. They continued till June, 1882, when city council created a new board of school trustees. In July, 1882, the board of education appointed K. and eleven others school trustees—three for each ward, the wards having been increased to four—for said city; who duly qualified, organized, and entered upon their duties. In August, 1882, E. and the five other appointees of the city council obtained from the judge of the hustings court of Portsmouth an injunction inhibiting K. and his eleven co-trustees from acting as members of the school board of Portsmouth, &c. Defendants demurred and answered. The hustings court, on 28th December, 1882, hearing the cause, overruled the demurrer and perpetuated the injunction. On appeal to this court—

HELD:

1. As this case involved the question of title to office, injunction was not the proper remedy, and the demurrer to the bill should have been sustained and the bill dismissed.
2. The appointment of E. and his five associates by the city council was without authority of law, and void.
3. The appointment of K. and his eleven co-trustees by the board of education was pursuant to law, and is valid.

Appeal of Thomas J. Kilpatrick and others from decree of hustings court of the city of Portsmouth, rendered 28th December, 1882, in a chancery cause in which O. V. Smith and others were plaintiffs, and the petitioners and others were defendants. In 1870 the state board of education appointed six school trustees for that city, which had then only two wards. The city council did not designate which of the trustees were to go out of office in one, which in two, and which in three years. They and the successors of such as died in the meantime, held over as such trustees until June, 1882, when the city council appointed O. V. Smith and five others such trustees. The board of education claimed that as the city council did not supply the vacancies in the offices of the trustees first by the board appointed, within sixty days from their occurrence, the city council had no authority afterwards to supply them, and that the right so to do had devolved on the board of education. Hence, in July, 1882,

the board of education appointed Thomas J. Kilpatrick and eleven others—three for each of the four city wards—such school trustees, who duly qualified, organized and entered on their duties. But O. V. Smith and the five other appointees obtained an injunction from the judge of the hustings court of the city inhibiting Kilpatrick and his eleven associates from acting as such trustees, &c. The defendants demurred on the ground that *quo warranto*, not injunction, was the remedy for the plaintiffs claiming the right to these offices, and they answered setting up the invalidity of the appointment of the plaintiffs and the validity of their own appointment. At the hearing the hustings court overruled the demurrer, and perpetuated the injunction. From this decree, Kilpatrick and his co-trustees obtained an appeal *and supersedeas.*

Opinion fully states the other facts and the proceedings in the case.

*C. W. Murdaugh*, and *J. W. Happer*, for the appellants.

*L. R. & A. S. Watts*, for the appellees.

RICHARDSON, J., delivered the opinion of the court.

This is a contest between two classes of persons, each claiming to constitute rightfully the board of school trustees for the city of Portsmouth.

Viewing with just concern the great importance to the state of a system of public free education, the people of Virginia, through their representatives, in convention assembled, for the first time in the history of this commonwealth, gave special significance to their appreciation of the subject by causing it to be provided, in specific mandatory terms, in the constitution now in force, that the general assembly should, at its first session thereunder, provide by law, a *uniform* system of public free schools. To this subject the ninth article of the constitution is

entirely devoted. A brief summary of some of its many striking provisions, will greatly aid in demonstrating the justness of the conclusion arrived at in this case.

The first section of said article makes it obligatory upon the general assembly to elect on joint ballot, within thirty days after its organization, under the present constitution, and every four years thereafter, a superintendent of public instruction for the state at large, and gives to him the general supervision of public free school interests of the state, and requires him to report to the general assembly for its consideration, within thirty days after his election, a plan for a uniform system of public free schools.

The second section declares, that "there shall be a board of education, composed of the governor, superintendent of public instruction and attorney-general, which shall appoint and have power to remove, for cause and upon notice to the incumbents, subject to the confirmation of the senate, all county superintendent of public free schools;" and further provides, that such board shall have, regulated by law, the management and investments of all school funds, and such supervision of schools of higher grades as the law shall provide.

The third section provides: "The general assembly shall provide by law, at its first session under this constitution, a uniform system of public free schools," &c.

The fourth section reads: "The general assembly shall have power, after a full introduction of the public free school system, to make such laws as shall not permit parents and guardians to allow their children to grow up in ignorance and vagrancy."

Passing over other sections which impose further important duties upon the general assembly, such as the establishment of normal, agricultural and other schools necessary to the public good, of providing for uniformity of text books, the furnishing of school-houses with such apparatus and library as may be necessary, and requiring the general assembly to provide and set apart a permanent and perpetual fund for the support of free

schools, we come to the twelfth section of said article, which reads: "The general assembly shall fix the salaries and prescribe the duties of all school officers, and *shall* make all needful laws and regulations to carry into effect the public free school system provided for by this article."

Taking these several clauses of the ninth article of the constitution together, their meaning is so obvious that there is no room for doubt as to any one of them. They show the design of the framers of that instrument to have been that the board of education should be made the efficient supervisory influence in the conduct and management of the public free school system. There is but one limitation upon its power—that of requiring the confirmation of the senate in the appointment and removal of county superintendents of schools. Then, the grant of power by the twelfth section of said article, to the general assembly, to "make all needful laws and regulations," is so broad that everything essential to the success of the patriotic scheme of public free education is embraced, as was designed by the framers of our constitution.

With commendable promptness, the general assembly, at its first session under the constitution, passed an act entitled "an act to establish and maintain a uniform system of public free schools." Acts 1869–70, ch. 259, p. 402.

That act is broad, comprehensive, patriotic. By the first section thereof it is declared, "that there shall be established and maintained in this state a uniform system of public free schools."

The second section enacts that, "the public free school system shall be administered by the following authorities—to-wit., a board of education, a superintendent of public instruction, county superintendent of schools, and district school trustees."

The third section, following the language of the constitution, declares that "the board of education shall consist of the governor, the superintendent of public instruction, and the attorney-general."

The seventh section of the act prescribes, with notable partic-

ularity, the duties of the state board of education; and, among others, that of appointing and removing district school trustees, until otherwise provided.

Sections fifteen to twenty-four, inclusive, clearly prescribe the duties of school trustees, applicable alike to counties and cities. And the thirtieth section provides that: "All school officers going out of office shall deliver to their successors the records and all official papers belonging to the office. In case of the refusal or failure of any officer to do so, on demand of his successor, he shall forfeit not less than twenty-five nor more than one hundred dollars therefor, and a like penalty for each month during which he shall persist in withholding the same."

Such are the provisions in part of the act of 1869–'70, establishing a uniform system of public free schools in the commonwealth; but this general act was wanting in certain particulars in adaptation to the cities of the state. So, at the succeeding session of the general assembly an act was passed to provide a system of public free schools in the cities. Acts 1870–'71, ch. 308, p. 405. This act in no material point abridges the powers and authority of the state board of education conferred by the act of 1869–'70, before referred to. It makes each ward in a city a school district (section 3), and provides for each the same number of school trustees, and confers on them the same powers, and charges them with the same duties as the trustees of ordinary school districts. See section seven. It provides that vacancies in the board of school trustees for a city may be supplied at any time within sixty days after their occurrence, by appointment by the city council; and provided further, that as soon as might be after the passage thereof, the city council should designate which of the trustees then in office should go out of office at the end of one year, which at the end of two, and which at the end of three years. And expressly, further provides, that "should the city council in any case fail to act within the time prescribed, it shall be the duty of the board of education to fill the vacancy or vacancies without further delay."

It appears from the record that sometime in 1869 or '70, the board of education appointed John Emmerson, C. W. Murdaugh, A. S. Watts, James H. Clements, George W. Grice, and C. R. McAlpine, trustees for said city of Portsmouth; being three for each ward; the city at that time containing two wards only. These constituted the original board of school trustees, and so far as the record shows, continued unlooked after or cared for until June, 1882, when the city council, it seems, very suddenly became alive, as we must presume from its hasty and inconsiderate action, to the importance of duties long neglected, and when the time within which they might, in certain contingencies, have acted, had long since expired, undertook to appoint, in effect, a new board of trustees, and actually went through the forms of creating said new board. The board of school trustees thus attempted to be created are the appellees here.

On the — day of July, 1882, the board of education properly treating said original board as defunct, for reasons hereinafter to be stated, proceeded to appoint a new board of school trustees, and appointed a board of twelve, being three for each ward of said city, which had been divided into four wards subsequent to the appointment of said original board.

The new board of trustees, the appellants, as shown by the record, duly qualified, and organized by electing their presiding officer and clerk of board, the latter being the same person who was clerk of the old board; and being thus organized and in possession of the books, records and papers belonging thereto, proceeded in the discharge of their duties.

In this state of facts, said pretended board, the appellees, applied to and obtained from the corporation court of the city of Portsmouth an injunction, restraining not only Thomas J. Kilpatrick and others, constituting said new board, but also enjoining and restraining G. F. Edwards, superintendent of public schools for said city, and H. F. Butt, clerk of said new board; all of whom were made parties defendant to the bill of complainants.

That said city superintendent of schools, and clerk of the new board, who had been clerk of the old board, were made parties, is a pregnant fact in this case, and goes very far to show the boldness of the claim of the appellees that they constitute the board of school trustees of said city, and were duly organized as such, and tends strongly to establish the claim of the appellants, that they were, and are the only true and legally constituted board of school trustees for said city.

In fact, the complainants, in their bill, admit that said city superintendent and clerk of board have, by coöperating with said new board, hindered and prevented the appellees from exercising the functions claimed by them. The complainants below, the appellees here, allege in their bill that at the time of the passage of the act of 1870–'71, for the regulation of public free schools in the several cities of this commonwealth, the said six school trustees constituted the old or original board of trustees for the city of Portsmouth; that they were recognized as such by the city council, and by the state board of education; and as such conducted and managed the schools in said city for a number of years—to-wit, from the date of their appointment down to June, 1882—a period of some twelve years. The record does not sustain, but disproves every material feature of the allegation—unless, indeed, long and gross neglect of official duty can sanction usurpation. But, however this may be, it cannot avail the appellees. They were not, and could not, by the means employed, become the successors of the original board, which had been for years *functus officio;* which was but a board *de facto* at most.

It is true that the old board held on in the most rugged possible way, and presumably exercised such functions as suited them, or were countenanced by the equally derelict city council. It is admitted by the appellees that the city council utterly failed to designate which of said original board of school trustees should go out of office at the end of one year, which at the end of two, and which at the end of three years. How, then, could

the council undertake to supply vacancies in a body no member of which had any legal existence? When would the term of such an appointee begin or end? He could succeed no one, because he could not connect himself, directly, with any lawful predecessor. He could have no title, because the time had passed within which the appointing power could confer title. The seventh section of chapter 308, Acts 1870–'71, expressly requires that, "should the council in any case fail to act within the time prescribed, it shall be the duty of the board of education to act without further delay." Each ward in a city is by law a school district; and the city board of trustees are required to report the number and boundaries of school districts to the superintendent of public instruction, to be recorded in his office, and also in that of the clerk of the corporation court. This duty, too, so far as the record speaks, has been utterly disregarded. Surely it would be difficult to find a case where an important public trust has been so much neglected, so much abused.

But the complainants below, in their bill, claim that inasmuch as the old board, composed of six, was recognized by the council as the true board, the state board (notwithstanding the city had subsequently been divided into four wards, and each ward declared by law a school district), had no power or authority under the law to enlarge the number, or in any way alter or interfere with the same so adopted and approved; and that the action of the state board appointing twelve trustees—three for each ward of said city—was contrary to law and a usurpation of authority. We have already given the law expressly conferring the authority on said board if the vacancies existed; and the only enquiry is, were the offices respectively of the said old trustees vacant when the new trustees were appointed?

Before disposing of the question, were the officers respectively of said board of trustees vacant, it will be proper to pursue further the proceedings had in the court below.

The respondents, the appellants here, demurred to complain-

ants' bill upon the ground that the question involved was one of title to office, and that the remedy was at law, by writ of *quo warranto*, and not by injunction in a court of equity. The court below overruled the demurrer, and the respondents answered, denying the allegations of complainants' bill, and asserted their rights under the provisions of law before referred to.

On the 28th day of December, 1882, the cause came on and was heard, when said corporation court entered a decree perpetuating the injunction, from which decree an appeal was allowed by one of the judges of this court.

Thus far, we have referred to the old board of trustees as constituted prior to the 20th day of June, 1882. On the day last named, the council of the city of Portsmouth, as if to forestall action on the part of the State board of education, undertook to elect or make up a board of trustees, and did elect Charles R. Robertson, John W. H. Porter, David A. Williams, A. C. Bushnell, and Charles T. Myers, who, with O. V. Smith, who had been elected in November, 1879, by said council, to fill a vacancy in the original board, caused by the death of Holt Wilson, who died November 7th, 1878, constituted the pretended new board; being six in all, and said Robertson and Porter being elected for three years, said Williams and Bushnell for two years, and said Myers for one year. At a subsequent meeting held on the 18th day of August, 1882, said council was notified of the non-acceptance of said Myers, and John C. Ashton was elected in his stead. And thus the new board of school trustees, as claimed, was made up, and they are the appellees here. For this action, on the part of the city council, there is no shadow of authority in either the constitution or statutes regulating our school system. O. V. Smith had served nearly a full term of three years when his associates were elected; he was elected about one year after the death of his predecessor, instead of within sixty days thereafter, and that predecessor himself had been illegally elected by the council long after the time in which it could

elect, and long after the time when the term of office of each of the original board had become vacant, which occurred sometime in the year 1874.

This is apparent from the record. Grice, one of the original board, died November 10th, 1875, having served fully one year over a full term of three years. His office had become vacant in 1874, and it was only within sixty days thereafter that the council could elect to fill the vacancy; yet it undertook to do so two years thereafter. Charles R. McAlpine, another of the original board, died 14th of February, 1876, nearly two years after the expiration of a full term of three years, so that the council had no authority to elect a successor in his case, but it undertook to do so. Holt Wilson, before referred to, died November 7th, 1878, and O. V. Smith, one of the appellees, was elected by said council to succeed said Holt Wilson, in November, 1879, nine months after the expiration of the period within which alone the council could elect. It is manifest, therefore, that said O. V. Smith has no claim of title. The five other appellees have no better title. They were all elected in August, 1882, eight years after the expiration, in any event, of the term of their predecessors. Add to these circumstances, manifesting utter indifference and neglect on the part of said council, the fact that there was a failure to classify said original board and designate which of them should go out of office in one year, which in two, and which in three years, and we have, indeed, "confusion worse confounded."

According to the general plan of our constitution and laws, the term of office in this case is fixed; that term is three years. The constitution did not create this office, but delegated the authority to create it, to the general assembly; in that clause authorizing that body to make all needful laws and regulations to carry into effect the public free school system; section twelve, article eight. The office was consequently created by the act of 1869-'70, and adopted to cities by the act of 1870-'71.

A school trustee is an officer. The act creating this office re-

quires the state board of education to appoint in the first instance,
and in case of vacancies occurring authorizes the city council to
supply them, if done within sixty days, not after; but if not
done within that time, then the express requirement is that the
state board shall act. In the absence of the designation before
referred to, the terms of office of each and all the school trustees
for the city of Portsmouth became, in the eye of the constitution,
vacant in the year 1874. It is not easy to see how said council
could, even then, have filled said vacancies, and classify and
designate when each class should go out; for to do so would be,
in effect, to create a new board, to do which no authority is con-
ferred by law. Hence the action taken by the council in June
and August, 1882, was clearly unauthorized, null and void.
The twenty-fifth section of article six of the constitution is, in
its nature, enabling. It empowers judges and all other offi-
cers elected or appointed to continue to discharge the duties of
their offices *after their terms* of service have expired, until their
successors have qualified, no longer. The office of school trustee
is filled in the first instance by appointment, by the state board
of education; and vacancies are supplied by appointments by
the council within sixty days, or, failing, by the board of educa-
tion. In this case, all being vacant, and the council having
failed to act in the prescribed time, there was no alternative but
for the board of education to act; and the appointments made
by that board in July, 1882, were authorized by law, and the
persons thus appointed constitute the only legal board of school
trustees for the city of Portsmouth.

But, it is claimed and asserted in the bill of complainants, the
appellees, that the state board of education only have the right
to act in case of vacancy after sixty days, and then only when
it acts before the council has acted, and has no right to appoint
on the expiration of the term, but only in the case of vacancy
caused by death, resignation, or some other cause. This is a
strange paradox, and, in the light of our law on the subject, to
adopt it as a canon of construction would be to convert the con-

stitution and law into a medley of absurd contradictions. It is, moreover, plainly in the teeth of the very letter of the law as written.

In support of the claim that no vacancies existed which could be supplied by the board of education, the appellees rely upon the cases of *The Commonwealth* v. *Hanley*, 9 Penn. St. R. 513; *The State* v. *Lusk*, 48 Mo. 242; and *The State* v. *Tilton*, 37 Cal. 614, and like cases, none of which have any application to cases arising under our constitution and statutes. They all turn upon language which expressly extends the term of office by the words, " *and until his successor shall duly qualify* "; or, " *and until his successor shall be elected and qualified.*"

The clause in question, in our constitution, does not extend the term, but simply enables the incumbent to hold over until his successor, whether elected or appointed, is chosen in the way prescribed by law. All the cases above referred to from other states were carefully examined and commented on in the case of *Johnson* v. *Mann, judge*, and another recently determined by this court, on a rehearing, and it is useless to go over them again.

It is, perhaps, proper here to remark that the decisions of courts of our sister states upon the words *and until his successor shall be elected and qualified*, have not been uniform. The case of the *County of Wassello* v. *Bigham*, 10 Iowa R., forms a striking exception, and has not been referred to by council on either side. That was a case of a county treasurer, where the term was limited to *two years and until his successor is elected and qualified*. And it was held, that by reason of the failure of the treasurer, who was reëlected for a second term, to qualify within the time and in the manner prescribed by law, the office became vacant, and should be filled by appointment by the county judge.

For the reasons herein given, this court is of opinion (1) that in this case, involving as it does, the question of title to office, injunction was not the proper remedy, and that the demurrer to complainants' bill ought to have been sustained by the court

below, and the bill dismissed; and (2) that upon the merits, the case is clearly with the appellants, and, therefore, the said decree of the corporation court of Portsmouth must be reversed and annulled, the injunction, thereby made perpetual, dissolved, and the bill dismissed, and the appellees required to surrender their said offices, respectfully, of school trustees for the city of Portsmouth, together with all books, records, papers and other valuables belonging thereto, to the appellants, the rightful board of school trustees for said city.

The decree was as follows:

This day came again the parties, by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that in this case, involving, as it does, the question of title to office, injunction was not the proper remedy, and that the demurrer to complainant's bill ought to have been sustained by the court below and the bill dismissed, and that upon the merits this case is clearly with the appellants. It is, therefore, decreed and ordered that the decree of the said hustings court be reversed and annulled, and that the appellees pay to the appellants their costs by them expended in the prosecution of their appeal and *supersedeas* here.

And this court, proceeding to render such decree as the said hustings court ought to have rendered, it is considered by the court that the demurrer to the plaintiffs' bill be sustained, and that said bill be dismissed, and the plaintiffs in said hustings court pay to the defendants their costs by them expended in the said hustings court.

Which is ordered to be certified to the said hustings court of the city of Portsmouth.

DECREE REVERSED.