# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1886, IN THE SEVENTY-
FIRST YEAR OF THE STATE.

———————◆———————

### No. 13,491.

### SMITH v. MYERS.

INJUNCTION.—*Jurisdiction.*—*Election Returns.*—*Alleged Illegality.*—*Custodian.*
—*Secretary of State.*—*Speaker of House of Representatives.*—The courts have
no jurisdiction of a suit to enjoin the secretary of state from delivering
to the speaker of the house of representatives the sealed returns, alleged
to be wrongful and illegal, of an election for Lieutenant-Governor, which
are directed to the speaker, as required by law, in care of the secretary,
and are to be delivered to him by the latter.

SAME.—*Jurisdiction of Subject-Matter.*—*Consent of Parties.*—Jurisdiction over
the subject-matter must be given by law; it can not be conferred by con-
sent of the parties.

From the Marion Circuit Court.

*D. Turpie, J. B. Brown, J. W. Gordon* and *J. C. F. Gor-
don,* for appellant.

*L. T. Michener,* Attorney General, *W. H. H. Miller* and *S.
J. Peelle,* for appellee.

ELLIOTT, C. J.—Stripped of unnecessary verbiage, and ex-

hibited in a condensed form, the material allegations of the complaint are these: That the appellant was qualified to hold the office of senator in the General Assembly of the State; that he was elected to that office on the 7th day of November, 1884, for the term of four years, and still remains in office; that on the 13th day of April, 1885, he was chosen President of the senate of Indiana, accepted that position, and still holds it, ready, willing and qualified to discharge its duties; that on the 7th day of November, 1884, Mahlon D. Manson was elected to the office of Lieutenant-Governor, for the term of four years, and that his term of office began on the second Monday in January, 1885; that Mahlon D. Manson vacated the office to which he was elected in July, 1886, by accepting the office of collector of internal revenue for the seventh district of Indiana; that by reason of the vacancy created by the acceptance of the Federal office by Lieutenant-Governor Manson, the appellant is, to quote literally from the complaint, " entitled to discharge the duties of said office as required and provided by the Constitution and laws of the State of Indiana, and to receive the pay and emoluments of the said office;" that, on the 2d day of November, 1886, a general election was held in the State of Indiana, and four persons procured themselves to be voted for by the electors of the State as candidates for the office of Lieutenant-Governor; that at the proper time these votes were canvassed by the election officers, and on the day following the canvass in all the counties of the State, the clerks of the respective counties did make out certificates, duly signed and sealed, and did forward them by mail to Indianapolis, addressed to the speaker of the house of representatives of the State of Indiana, in the care of William R. Myers, the appellee, as secretary of state; that the secretary of state, William R. Myers, received in due course of mail the sealed packages transmitted to him by the clerks of the several counties of the State, and that he now has custody of the sealed packages, and threatens to deliver them to the speaker of the house of rep-

resentatives, and that he will so deliver them unless enjoined by the court; that the certificates and returns contained in the sealed packages, of which the secretary of state has possession, are wrongful and illegal; that, to again quote from the complaint, the said William R. Myers ought not to be permitted " to deliver the same to the speaker of the house of representatives, thereby assisting in casting a cloud upon the right and title of the plaintiff to discharge the office of Lieutenant-Governor." The prayer of the complaint is, " that the said William R. Myers, secretary for the State of Indiana, as aforesaid, be perpetually enjoined from delivering the sealed packages in his possession to the speaker of the house of representatives."

The question which faces us at the threshold is one of controlling influence, and the answer to it must rule our decision. The question of jurisdiction is always one of importance, but in no case is it more important than where, as here, the extraordinary remedy of injunction is invoked to control the acts of officers holding high places in the government of the State. In cases like this, where the judicial department is asked to enjoin an officer of a different branch of the government from performing an official act, the question is always one of dominating force, and sometimes of perplexing difficulty. On the one hand, no consideration of policy or convenience should induce the courts to assume to exercise a power that does not belong to them, nor, on the other hand, should any consideration of that kind, or of any kind, induce them to surrender a power which it is their duty to exercise. The assumption of a power not vested in them would be a violation of the Constitution, since it would be an usurpation of a power conferred upon another branch of the government. It would disturb the system of checks and balances which the Constitution has so carefully constructed, and which the courts have ever guarded with most scrupulous care. The question is as important as any that the courts encounter in the whole range of judicial investigation, and it is always re-

garded as one of great delicacy, to be considered with care and disposed of with caution. The question of jurisdiction is never in any case a technical or subordinate one, and certainly it is not so in the one before us.

It often becomes a question in cases of the general class to which the present belongs, whether a suit for injunction can be maintained in any case where the title to a public office is involved, and by many courts it is held that in such cases there is no jurisdiction. *Foster* v. *Moore*, 32 Kan. 483; *Gilroy's Appeal*, 100 Pa. St. 5; *Stone* v. *Wetmore*, 42 Ga. 601; *Kilpatrick* v. *Smith*, 77 Va. 347; *Jones* v. *Commissioners, etc.*, 77 N. C. 280; *Patterson* v. *Hubbs*, 65 N. C. 119; *Moulton* v. *Reid*, 54 Ala. 320; *Beebe* v. *Robinson*, 52 Ala. 66; *People* v. *Draper*, 24 Barb. 265; *Planters' Com. Ass'n* v. *Hanes*, 52 Miss. 469; *Sheridan* v. *Colvin*, 78 Ill. 237; *People* v. *Forquer*, Breese (Ill.) 104; *Hulseman* v. *Rems*, 41 Pa. St. 396; *Commonwealth* v. *Baxter*, 35 Pa. St. 263; *State* v. *Governor*, 1 Dutch. (N. J.) 331; *Peck* v. *Weddell*, 17 Ohio St. 271; *Ingerson* v. *Berry*, 14 Ohio St. 315; *Markle* v. *Wright*, 13 Ind. 548; *Beal* v. *Ray*, 17 Ind. 554.

But the case before us is narrowed to a small compass by the provisions of our Constitution and our statute, and it is unnecessary for us to enter into the broad field covered by the cases to which we have referred. We abstain, therefore, from any discussion of the general doctrine declared by those cases. Nor do we deem it necessary to determine the relation of the remedy of mandamus to that of injunction, for it is not necessary to a decision of the ruling question as it is here presented; nor is it necessary to determine whether the title to an office may be tried in an action for mandamus. All that we are required to decide, all that it is proper for us to decide, and all that we do decide is, that injunction will not lie in such a case as the one presented to us by the record.

The Constitution of the State provides that " The returns of every election for Governor and Lieutenant-Governor shall be sealed up and transmitted to the seat of government, di-

rected to the speaker of the house of representatives, who shall open and publish them in the presence of both houses of the General Assembly." Art. 5, section 4. The provisions of our statute are : " Each clerk of the circuit court shall, on the day following the return day of an election for Governor and Lieutenant-Governor, make out, at full length, two certified statements, under the seal of his court, of the number of votes each candidate received ; one of which he shall transmit to the speaker of the house of representatives of the next General Assembly, by his senator or representative, who shall deliver the same to such speaker on or before the second day of the session, and the other certified statement shall be transmitted by mail to Indianapolis, directed to said speaker, and to the care of the secretary of state, by whom the same shall be delivered to the speaker on or before the second day of the session." R. S. 1881, section 4729.

It appears from these constitutional and statutory provisions, that the papers sent by the clerks of the counties of the State to Indianapolis, addressed to the speaker of the house of representatives, in the care of the secretary of the state, are in the hands of the secretary as a mere custodian, charged with the duty of delivering them to the speaker of the house of representatives. Nothing that the secretary can do can give validity to the papers if they have none by force of law, and nothing he can do can deprive them of validity if under the law they are valid. If the secretary may be enjoined from performing the imperative duty cast upon him by law, then, upon like reasoning, so may the clerks of the counties, and the members of the General Assembly to whom duplicates of such papers are entrusted for delivery to the officer to whom they are addressed, and to whom the law declares they shall be delivered. We doubt whether papers directed by law to be delivered to a designated officer can, in any case, be stopped by injunction in the hands of a mere custodian charged by law with the duty of delivering them ; but, however this may be, we are clear that they can not be stopped

by injunction in the hands of the custodian in such a case as that which this record presents to us. If the courts should enjoin the secretary of state, no substantial result would be accomplished, because duplicates of the papers in his custody are in the hands of members of the General Assembly, who are charged by law with the duty of delivering them to the speaker, to whom they are addressed, and the courts can not enjoin legislators from performing a duty cast upon them by the law. Decrees of courts in injunction cases can only be enforced by punishing, by fine or imprisonment, those who disregard them, and it can not be true that courts can fine or imprison legislators for doing what the law directs them to do. It is a general principle, well grounded in reason and firmly established by authority, that courts will not issue writs of injunction in cases where they would be unavailing, and a writ would be unavailing here, for the courts can not inflict punishment upon officers for doing what the law commands them to do.

It is a principle of constitutional law, declared in our Constitution and enforced by many decisions of our own and other courts, that the departments of government are separate and distinct, and that the officers of one department shall not invade any other. To interfere by injunction in this case would involve a violation of this fundamental principle, as a conflict between two great departments of the government would result from an exercise of the jurisdiction invoked by the appellant. The General Assembly has power to compel the attendance of persons at its sessions, and to compel the production of papers which are necessary to enable it to justly and intelligently discharge its duties and exercise its functions. If the judiciary should enjoin the secretary of state from delivering to the speaker the papers described in the complaint, and the General Assembly should demand their delivery to the officer to whom they are addressed, a conflict of authority would arise which no tribunal could effectually determine. If the secretary should in such

a case yield to the demand of the General Assembly, he would be in contempt of the authority of the court, and liable to punishment; if, on the other hand, he should disobey the command of the General Assembly, he would be in contempt of its authority, and subject to punishment. If the General Assembly should deem it the duty of the secretary of state to deliver the papers, it would not require the aid of the courts to compel its performance, for it possesses the power to coerce the production of papers and documents. R. S. 1881, section 4736.

There is, we know, some conflict in the cases as to whether the Legislature possesses the general inherent power to punish for contempt; but it is agreed without substantial diversity of opinion, that it may make and enforce orders for the production of papers in matters in which it has power to act. *Anderson* v. *Dunn*, 6 Wheat. 204; *Kilbourn* v. *Thompson*, 103 U. S. 168; *Mariner* v. *Dyer*, 2 Greenl. 165; *Yates* v. *Lansing*, 9 Johns. 395; *United States* v. *Hudson*, 7 Cranch, 32; *Tenney's Case*, 23 N. H. 162; *State* v. *Copp*, 15 N. H. 212; *Ex parte Dalton*, 5 N. E. Rep. 136.

It is apparent, therefore, that as, on the one hand, the General Assembly would not require the aid of the courts, by mandamus or otherwise, to compel the production of papers addressed, by direction of the Constitution and the statute, to the presiding officer of one of its branches, so, on the other hand, the courts can not by injunction restrain it from obtaining those papers, nor by indirection produce that result by stopping them in the hands of one whom the law makes a mere custodian.

Many cases assert that courts can not control by injunction, or by any other writ, the exercise of a purely legislative or executive power. *Vicksburg* v. *Lowry*, 61 Miss. 102 (48 Am. R. 76); *Hawkins* v. *Governor*, 1 Ark. 570 (33 Am. Dec. 346); *State* v. *Drew*, 17 Fla. 67; *Low* v. *Towns*, 8 Ga. 360; *People* v. *Bissell*, 19 Ill. 229; *People* v. *Yates*, 40 Ill. 126; *State* v. *Warmoth*, 22 La. Ann. 1; *In re Dennett*,

32 Maine, 508; *Rice* v. *Austin*, 19 Minn. 103 (18 Am. R. 330); *State* v. *Governor*, 39 Mo. 388; *Mauran* v. *Smith*, 8 R. I. 192 (5 Am. R. 564); *Turnpike Co.* v. *Brown*, 8 Baxter, 490 (35 Am. R. 713); *Houston, etc., R. W. Co.* v. *Randolph*, 24 Texas, 317; *City of Chicago* v. *Evans*, 24 Ill. 52; *Smith* v. *McCarthy*, 56 Pa. St. 359; *Des Moines Gas Co.* v. *City of Des Moines*, 44 Iowa, 505 (24 Am. R. 756).

The principle which underlies the decisions is well stated by our own court in *Wright* v. *Defrees*, 8 Ind. 298, where it was said: "The powers of the three departments are not merely equal,—they are exclusive, in respect to the duties assigned to each. They are absolutely independent of each other."

In other cases this principle has been asserted and enforced. *Little* v. *State*, 90 Ind. 338 (46 Am. R. 224), and cases cited; *Gregory* v. *State, ex rel.*, 94 Ind. 384 (48 Am. R. 162); *Butler* v. *State*, 97 Ind. 373.

To stay papers addressed to the presiding officer of one of the branches of the Legislature in the hands of a mere custodian, would be an invasion of this doctrine, and one that might produce a serious conflict between the judicial and legislative departments of the government. In refusing to interfere by injunction, the court neither decides that the papers are of legal force, nor determines what disposition can be legally made of them, for it simply declines to interfere by injunction, because it has no jurisdiction to award such a writ.

The question is one of jurisdiction over the subject-matter, and jurisdiction of the subject-matter comes from the law alone. It is perfectly clear in reason and upon authority, that no man can invest the courts with jurisdiction of the subject-matter. The law alone can do this.

In giving judgment upon a case very like the present in principle, the Supreme Court of Minnesota said: "An executive officer can not surrender the defences which, not for his, but for the public good, the Constitution has placed around

his office. Still less can his consent authorize this court to transgress the constitutional limitation of its powers, and assume a jurisdiction, which, by the fundamental law, it is forbidden to exercise." *County Treasurer* v. *Dike,* 20 Minn. 363.

There are well reasoned cases that go so far as to hold that, the Legislature itself can not invest the judicial department of the government with authority to assume jurisdiction over the legislative or executive departments. *Sterling* v. *Drake,* 29 Ohio St. 457 (23 Am. R. 762) ; *State* v. *Nichols,* 26 Ark. 74 (7 Am. R. 600) ; *State* v. *Sloss,* 25 Mo. 291 ; *Attorney General* v. *Brown,* 1 Wis. 513 ; *Haley* v. *Clark,* 26 Ala. 439.

This is, indeed, the principle asserted in *Butler* v. *State,* *supra,* where it was held that the Legislature could not confer upon the courts the authority to pardon or reprieve persons convicted of crime, as that power is conferred upon the Governor by the Constitution of the State.

It is a rudimentary principle, acted upon again and again, that when it is ascertained that there is no jurisdiction, courts will go no further. It would not only be a vain and fruitless thing to assume to decide a question when there is no jurisdiction, but it would be a mischievous thing, because it would give an appearance of authority to that which is utterly destitute of force. Such a decision would be the merest shadow of authority, binding nobody. *People* v. *Walter,* 68 N. Y. 403, see p. 411 ; *Weeden* v. *Town Council,* 9 R. I. 128.

It is laid up among the earliest principles of the law, that a decision, where there is no jurisdiction, is absolutely and incurably void. This principle frequently finds expression, although not always accurately or elegantly, in the statement, so often found in the books, that " such a judgment is *coram non judice* and void." But one result can here be reached, either on principle or authority, and that is, that the courts have no jurisdiction to entertain this suit.

Judgment affirmed.

Filed Jan. 4, 1887.